ORIGINAL




2005 OCT 17 P 2: 56

Kelly A. Evans
Nevada Bar No. 7691
SNELL & WILMER L.L.P.
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89109
Telephone (702) 784-5200
Facsimile (702) 784-5400

David H. Kramer (Admitted Pro Hac Vice)
William O'Callaghan (Admitted Pro Hac Vice)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone (650) 493-9300
Facsimile (650) 493-6811

Attorneys for Defendant GOOGLE INC.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BLAKE A. FIELD,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>GOOGLE INC.,<br><br>　　　　Defendant. | No. CV-S-04-0413-RCJ-GWF<br><br>**GOOGLE INC.'S OPPOSITION TO PLAINTIFF BLAKE A. FIELD'S MOTION FOR SUMMARY JUDGMENT** |
| AND RELATED COUNTERCLAIMS | |

GOOGLE'S OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. CV-S-04-0413-RCJ-GWF

2741753_7.DOC

45

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. RESPONSE TO FIELD'S STATEMENT OF UNDISPUTED "FACTS" ........................ 2

III. ARGUMENT ........................................................................................................................ 4

    A. Field Has Failed To Identify Any Copyright Infringement By Google. ................. 4

    B. Field Is Not Entitled To Summary Judgment On Google's Implied License And Estoppel Defenses. ........................................................................................... 5

    C. Google's Operation Of Its System Cache Is A Fair Use. ........................................ 6

    D. Field Is Not Entitled To Summary Judgment On The DMCA. .............................. 9

        1. Field Has Made No Effort At All To Support A Request For Summary Judgment On The DMCA Safe Harbors In Sections 512(a), 512(c), And 512(d). ......................................................................... 10

        2. Field's Request For Summary Judgment That Google Does Not Qualify For The Section 512(b) Safe Harbor Is Misguided. ..................... 11

IV. CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

**CASES**           **Page(s)**

*Agee v. Paramount Communications, Inc.*, 59 F.3d 317 (2d Cir. 1995) .................... 5

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) .................... 7, 8

*Carson v. Dynegy, Inc.*, 344 F.3d 446 (5th Cir. 2003) .................... 5, 6

*CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544 (4th Cir. 2004) .................... 5

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, No. SA CV 03-110-GLT (ANx), 2005 U.S. Dist. LEXIS 6567 (C.D. Cal. April 8, 2005) .................... 10

*Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990) .................... 5

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) .................... 9, 11

*In re Napster, Inc. Copyright Litig.*, No. C 04-2121 MHP, 2005 U.S. Dist. LEXIS 11500 (N.D. Cal. June 1, 2005) .................... 5

*Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944 (S.D.N.Y. 1997) .................... 6

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003) .................... 1, 6, 7, 8

*Los Angeles Times v. Free Republic*, No. CV 98-7840 MMM (AJWx), 2000 U.S. Dist. LEXIS 5669 (March 31, 2000) .................... 7

*Martin v. Cuny*, 887 F. Supp. 1390 (D. Colo. 1995) .................... 6

*Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) .................... 8

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099 (9th Cir. 2000) .................... 6, 10

*Quinn v. City of Detroit*, 23 F. Supp. 2d 741 (E.D. Mich. 1998) .................... 5

*Religious Tech. Ctr. v. Netcom On-Line Communications Servs., Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995) .................... 5, 8

*Sega Enters., Ltd v. MAPHIA*, 948 F. Supp. 923 (N.D. Cal. 1996) .................... 5

*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) .................... 8

*United States v. Bohn*, 956 F.2d 208 (9th Cir. 1992) .................... 11

*United States v. Boyce*, 148 F. Supp. 2d 1069 (S.D. Cal. 2001) .................... 11

*Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110 (9th Cir. 2000) .................... 7

## STATUTES

17 U.S.C. § 106 (2005) .................................................................................................................. 4

17 U.S.C. § 512(a)-(d) (2005) ....................................................................................................... 9
    § 512(a) ........................................................................................................................ 2, 9, 10
    § 512(b) ............................................................................................................................ *passim*
    § 512(b)(1) ............................................................................................................................ 11
    § 512(b)(1)(A) ...................................................................................................................... 12
    § 512(b)(1)(B) ...................................................................................................................... 12
    § 512(b)(1)(C) ...................................................................................................................... 12
    § 512(b)(2)(C) ...................................................................................................................... 12
    § 512(c) ........................................................................................................................ 2, 9, 10
    § 512(d) ........................................................................................................................ 2, 9, 10

## RULES

Fed. R. Civ. P. 56(c) .................................................................................................................... 10

## MISCELLANEOUS

H.R. Rep. 105-551, pt. 2 (1998) ..................................................................................................... 9

S. Rep. 105-190 (1998) .................................................................................................................. 9

Snell & Wilmer L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702)784-5200

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| Brougher Decl. | Declaration of Bill Brougher in Support of Google Inc.'s Motion for Summary Judgment, filed September 27, 2005. |
| Field Depo. | Transcript from the deposition of Blake A. Field, taken on June 9, 2005 (excerpts attached as Ex. 1 to the O'Callaghan Decl.). |
| Field's Motion | Plaintiff's Motion for Summary Judgment and Memorandum of Points and Authorities In Support Thereof. |
| Google's Motion | Google Inc.'s Motion for Summary Judgment, filed September 27, 2005. |
| Levine Decl. | Declaration of Dr. John R. Levine in Support of Google Inc.'s Motion for Summary Judgment, filed September 27, 2005. |
| Levine Report | Expert Report of Dr. John R. Levine (attached as Ex. 1 to the Levine Decl.). |
| Macgillivray Decl. | Declaration of Alexander Macgillivray in Support of Google Inc.'s Motion for Summary Judgment, filed September 27, 2005. |
| O'Callaghan Decl. | Declaration of William O'Callaghan in Support of Google Inc.'s Motion for Summary Judgment, filed September 27, 2005. |

## I. INTRODUCTION

The parties to this case agree on at least one thing: that this case is ripe for summary judgment. Plaintiff Blake Field ("Field") and Defendant Google Inc. ("Google") agree that there are no genuine issues of material fact, and that this case should be decided as a matter of law. In its own motion for summary judgment, Google offered undisputed evidence supporting the dismissal of Field's claims, both because Field cannot establish infringement and because Google is entitled to judgment in its favor on several defenses. By contrast, Field's summary judgment motion rests on nothing but the miscitation of controlling law and a smattering of irrelevant facts.

Field has offered no evidence establishing that Google infringed the copyrights on his works by making Web pages containing those works accessible through its "Cached" links. Indeed, it is undisputed that Field himself was responsible for creating the very copies of his works at issue here. As a matter of law, Google neither copied nor distributed Field's works in violation of the Copyright Act. Accordingly, Field cannot satisfy even his initial burden of proving a *prima facie* case of infringement, and his entire motion should be denied on that basis.

Field's cursory discussion of Google's implied license and estoppel defenses borders on frivolous. Field ignores the implied license defense entirely, and cites not a single authority with respect to the estoppel defense. As Google explains in its motion, because Field deliberately acted expecting the result about which he now complains, his claim is barred under either doctrine. Field certainly is not entitled to summary judgment on the defenses.

Even if Field could establish a *prima facie* infringement claim against Google, Google's conduct would be protected under the fair use doctrine. It is undisputed that, through its "Cached" links, Google simply makes available archival copies of Web pages whose owners have offered the pages for free to the world. Field concedes that "Cached" links provide users with benefits they cannot obtain by resort to the original pages. Google's use is thus "transformative," and precisely the sort of use by a search engine that the Ninth Circuit found to be fair in *Kelly v. Arriba*. Field chose to ignore this controlling case entirely.

GOOGLE'S OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. CV-S-04-0413-RCJ-GWF                             -1-                                    2741753_7.DOC

1  Field's authorities are inapposite and his reliance on them betrays the poverty of his position.
2  Given the undisputed facts, Google is entitled to the protections of the fair use doctrine as a
3  matter of law. Field's motion for summary judgment on the fair use defense must therefore be
4  denied.

5      Finally, Field's attempt to overcome Google's defenses under the Digital Millennium
6  Copyright Act ("DMCA") is both inadequate and misguided. Field seeks to dismiss three of
7  the DMCA's safe harbors with a single sentence, offering to address their applicability for the
8  first time in a reply brief. But Field has failed to carry his burden as the party seeking
9  summary judgment with respect to Sections 512(a), (c) and (d). As a result, his motion with
10 respect to those defenses must fail. Field's cursory discussion of the Section 512(b) safe
11 harbor leads to the same result, as Field seeks to rewrite the statute and impose requirements
12 on Google that simply do not exist. In reality, Google's cache indisputably satisfies all of the
13 requirements of Section 512(b). Accordingly, Field is not entitled to summary judgment on
14 this defense either.

15 **II.    RESPONSE TO FIELD'S STATEMENT OF UNDISPUTED "FACTS"**

16     In its parallel Motion for Summary Judgment, Google has set forth in detail the
17 undisputed facts that bear upon Field's claim for copyright infringement and Google's
18 defenses to it. Rather than repeat that lengthy discussion, Google simply incorporates it in full,
19 including the Declarations of Bill Brougher, Dr. John Levine, Alexander Macgillivray and
20 William O'Callaghan. As Google has demonstrated, the relevant, undisputed facts entitle
21 Google to judgment and necessarily mandate denial of Field's motion.

22     Tellingly, Field does not offer evidence contradicting the factual propositions upon
23 which Google's motion rests. Rather, Field bases his motion on unsupported assertions,
24 mischaracterizations and irrelevancies.

25     According to Field, for example, "Google has admitted that each of the 51 works stored
26 in the Google cache were reproduced and distributed to at least one internet user or users." *See*
27 Field's Motion at 3. That is simply false. Google did not admit that Field's works in its cache
28 were "reproduced and distributed," and it certainly did not admit that Google reproduced and

distributed them. Indeed, Google merely admitted that some user — whom even then Google suspected was Field himself — had accessed a copy of Field's works in Google's cache. *See* Field's Motion Ex. B (Google's Response to Request for Admissions) Nos. 52-102. In truth, Field points to nothing to support his legal conclusions about "reproduction" and "distribution" by Google.

Google's suspicions about Field having manufactured his claim were proven true in discovery. Field has admitted that it was he who clicked on the "Cached" links for the pages containing his works; that it was he who retrieved copies of those works; and that he has no evidence of anyone else ever doing so. *See* Field Depo. at 110:17-20, 111:3-9, 121:20-25; O'Callaghan Decl. Ex. 2 at 9 (Response to Interrogatory No. 12). Field even now would have the Court overlook this critical point, disingenuously claiming in his brief only that "someone" retrieved a copy of his works from Google's cache, without ever informing the Court that that someone is Field himself.[1]

Field uses similar misdirection in discussing the supposedly "commercial" nature of Google's "Cached" links, presumably to support his arguments concerning the fair use doctrine. Field pretends, for example, that there is some connection between Google's "Cached" links and the revenue that Google earns from advertisements. *See* Field's Motion at 4.[2] But Google does not earn any revenue when a user clicks on a "Cached" link, and it

---

[1] At several points, Field mischaracterizes details about the operation of Google's cache. Field asserts, for example, that "[t]hird-persons cannot put material into the Google cache, by uploading or other means." *See* Field's Motion at 2. Field's point is unclear and his assertion is misleading at best. Google maintains an online, self-submission form which allows Web site owners to specifically request that Google send its Googlebot to their Web sites where it copies their Web pages into the Google system cache and includes those pages in its search results. *See* Brougher Decl. ¶6. Field was not only aware of this procedure, he in fact took advantage of it and directly submitted his Web site to Google for inclusion in its search results, where he knew Google would provide "Cached" links to its pages. *See* Field Depo. at 99:1-10. Field also makes the misleading suggestion that Google will display "Cached" links to a Web page unless the page contains meta-tags instructing Google not to do so. *See* Field's Motion at 3. While, as Field knew full well, use of a meta-tag is one way to ensure that Google does not display a "Cached" link to a particular page, it is by no means the only such method. *See* Google's Motion at 10-13; *see also* Brougher Decl. ¶¶18-25.

[2] Google earns revenue when users click through advertisements that are displayed on the pages with its search results, and Google provides a clear separation between its search results

(continued...)

certainly made no money by displaying "Cached" links to the pages from Field's site. *See* Brougher Decl. ¶13. Indeed, Field's own screen shots show that Google did not display any advertisements on screens where "Cached" links to Field's pages were presented, much less display advertisements to a user who clicked on one of those "Cached" links. *See* Field's Motion Ex. D (screen shots showing that there was no Google advertising associated with the display of Google's cached copies of Field's Web pages). In short, there is no evidence whatsoever to suggest that Google profited from its "Cached" links, let alone from Field's works.[3]

### III. ARGUMENT

#### A. Field Has Failed To Identify Any Copyright Infringement By Google.

In the hopes of establishing a *prima facie* case of copyright infringement, Field claims in his motion that Google "reproduced" and "distributed" his works without his authorization. *See* Field's Motion at 6-8.[4] In its own motion, Google explains why Field's infringement theories are mistaken. In summary:

- Field concedes that the copy of the pages from his site made by the Googlebot and stored in Google's system cache does not in any way infringe his copyrights. *See, e.g.*, Field Depo. at 98:18-25.143:13–144:1 ("Q. So you don't object to Google's initial copying of your web pages for purposes of creating the Google index, do you? A. That's correct.").

- When a user clicks on a "Cached" link seeking access to a page within Google's cache, it is the user — not Google — who is responsible for making the copy of the page that the user obtains. Google is entirely passive in the process. Its computers simply respond automatically to the user's

---

(...continued from previous page)
and advertisements (with search results on the left hand side and advertisements on the right). *See, e.g.*, Brougher Decl., Ex. 1.

[3] Field also asserts that "[t]he cache functionality provided by Google serves as a draw for internet users." *See* Field's Motion at 4. As discussed below, even if true, this assertion is not material to the fair use analysis of Google's cache in general or an analysis of Google's supposed use of Field's works in particular. *See generally* Section III.C at 7-8, *infra* (discussing irrelevance of whether use is commercial in context of transformative uses). Perhaps more importantly, this conclusory assertion in Field's brief is not a substitute for evidence, and the deposition testimony Field cites as support for the proposition says no such thing. *See* Field's Motion Ex. A. (Brougher Depo.) at 74:3-11.

[4] Field does not contend that Google violated any of the other exclusive rights of a copyright owner, or is otherwise responsible for copyright infringement. *See* 17 U.S.C. § 106 (2005).

request. *See* Brougher Decl. ¶8. Google thus lacks the volitional conduct required to support an infringement charge. *See Religious Tech. Ctr. v. Netcom On-Line Communications Servs., Inc.*, 907 F. Supp. 1361, 1369-70 (N.D. Cal. 1995) (direct infringement requires a volitional act by defendant; automated copying by machines occasioned by others not sufficient); *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 555 (4th Cir. 2004) ("Agreeing with the analysis in *Netcom*, we hold that the automatic copying, storage, and transmission of copyrighted materials, when instigated by others, does not render an ISP strictly liable for copyright infringement under §§ 501 and 106 of the Copyright Act."); *Sega Enters., Ltd v. MAPHIA*, 948 F. Supp. 923, 931-932 (N.D. Cal. 1996).

- As a matter of law, providing a link to a copy of a work and allowing others to retrieve a copy of the work by clicking on the link does not constitute "distribution" of copies of the work within the meaning of the Copyright Act. *See In re Napster, Inc. Copyright Litig.*, No. C 04-2121 MHP, 2005 U.S. Dist. LEXIS 11500, at *21-22, 27-28 (N.D. Cal. June 1, 2005); *see also Agee v. Paramount Communications, Inc.*, 59 F.3d 317, 325-26 (2d Cir. 1995).

For these reasons, Field has not established, and cannot establish, a *prima facie* case of copyright infringement against Google based upon Google's having made available "Cached" links to pages from Field's site. Field's motion seeking a summary judgment that Google has infringed his copyrighted works must therefore be denied.

### B. Field Is Not Entitled To Summary Judgment On Google's Implied License And Estoppel Defenses.

In response to Field's copyright infringement claims, Google asserted the affirmative defenses of implied license and estoppel. In a single page of his brief, Field seeks to have both defenses dismissed. *See* Field's Motion at 14:14-15:14. The effort is wholly inadequate. Indeed, for the reasons stated in Google's motion, Google is entitled to judgment as a matter of law in its favor on these defenses. Google will not restate its evidence and arguments here, though they plainly defeat Field's motion. A few additional points, however, are worth noting:

- Field effectively ignores Google's implied license defense by lumping it together with Google's estoppel defense. The two are distinct.[5] Field's mere

---

[5] A copyright owner grants an implied license when, through his actions, he impliedly grants permission to use the copyrighted work. *See Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558-59 (9th Cir. 1990). In contrast, a copyright owner is estopped from claiming copyright infringement "if he aided the defendant in infringing or otherwise induced it to infringe or has committed covert acts such as holding out . . . by silence or inaction." *See Quinn v. City of Detroit*, 23 F. Supp. 2d 741, 753 (E.D. Mich. 1998). Because they provide separate bases for dismissing Field's claim, and have different requirements, the two defenses must be considered separately. *See, e.g., Carson v. Dynegy, Inc.*, 344 F.3d 446, 451-55 (5th Cir. 2003) (declining to find implied license, but holding that copyright owner was estopped from asserting

(continued...)

mention of the implied license defense does not come close to "negating an essential element of [Google's] . . . defense or show[ing] that [Google] does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

- Implied licenses are invariably established in the absence of express permissions or express prohibitions. They assume, by definition, that a copyright holder does not "speak" (something Field claims he should not be obligated to do), but nevertheless grants permission to use his work under particular circumstances. As Field concedes, without speaking, he impliedly licensed Google to visit his site and make a copy of it for purposes of displaying it in its search results. *See* Field Depo. at 143:13–144:1. In the same way, without speaking, he impliedly licensed the operation of Google's cache under long-standing Internet protocols.

- Field's response to Google's estoppel argument is that he should not have a "duty to speak" to Google about its "Cached" links. But Field does not offer a single case to support that position. In reality, courts have long held that copyright owners may be estopped from asserting copyright infringement if they have knowledge of an alleged infringing use and remain silent. *See Carson v. Dynegy, Inc.*, 344 F.3d 446, 453 (5th Cir. 2003) ("[I]t is accepted that estoppel may be accomplished by a plaintiff's silence and inaction."); *Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997) (copyright owner estopped because predecessor in interest had remained silent while defendant used the copyrighted software); *Martin v. Cuny*, 887 F. Supp. 1390, 1393, 1395 (D. Colo. 1995) (plaintiff estopped from asserting copyright infringement when he failed to assert his rights in copyrighted photographs that he transmitted to defendant). That is precisely what occurred here.

For these reasons, and those set forth in Google's motion, Google — not Field — is entitled to summary judgment on the defenses of implied license and estoppel.

### C.   Google's Operation Of Its System Cache Is A Fair Use.

While devoting much of his motion to the fair use defense, Field inexplicably ignores the controlling Ninth Circuit authority (and only authority) applying the fair use analysis to Internet search engines. As Google discusses in detail in its own motion, the undisputed facts of this case and the Ninth Circuit's reasoned analysis in *Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003) demonstrate that Google's operation of its system cache constitutes a non-infringing fair use. As Google's own analysis addresses virtually all of Field's fair use contentions, only a few new points are discussed here:

---

(...continued from previous page) infringement).

- Field argues that Google's cache functionality "supersedes" the purposes of his works and thus is not a "transformative" use. *See* Field's Motion at 11. That argument is not only unsupported, but actually refuted by the record. Field offers no evidence whatsoever that those who utilize "Cached" links do so as a substitute for visiting original pages. In fact, the evidence shows that (1) "Cached" links are used for alternative purposes not served by the original pages (*see, e.g.*, Levine Report ¶¶16-23); (2) that the overwhelming majority of Web site owners opt to permit "Cached" links to their site when they could prevent it in a matter of seconds, demonstrating that they do not view them as a substitute; and (3) Google includes design elements in its cache to ensure there is no likelihood that it is used as a substitute for original pages.[6]

- Field suggests that Google's use could not possibly be transformative because Google enables users to access a copy of the entirety of a work. But Field cites no authority for the blanket rule he proposes and it makes little sense. In many cases, it is necessary for a party to use the entirety of a work to serve its transformative purposes. Indeed, as *Kelly* shows, a party can use the entirety of a work and still make transformative use of that work. Put simply, determining how much of a work is used does not resolve the question of whether the use is transformative. The authorities on which Field relies are inapposite for this reason.[7]

- Though Field is plainly familiar with *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994), he ignores its clear teachings on the relevance of whether a use is commercial. As the Court explained, "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *See id.* at 579, 584. More specifically, the court held that there is no presumption of unfair use based on the commercial nature of transformative uses. *See id.* at 594 ("It was error for the Court of Appeals to conclude that the commercial

---

[6] Even if Field could show that, in theory, someone might use a copy found in the Google cache as a substitute for an original Web page, there is certainly no evidence that anyone has ever used the Google cache as a substitute for any of *Field's* works.

[7] In *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1112 (9th Cir. 2000), the Defendant, a church competing with the Plaintiff church, copied a 380-page book in its entirety and distributed the book to current and prospective members of both churches. *See id.* at 1113. But it was not because the defendant used the entirety of plaintiff's work in itself that ultimately rendered the use unfair. It was that defendant's use served the same "intrinsic purpose" as, and superseded the object of, the original work. *See id.* at 1117-18. *In fact, the defendant did not even contend that its use was transformative. Id.* (defendant based fair use defense on fact that it was a non-profit organization).

*Los Angeles Times v. Free Republic*, No. CV 98-7840 MMM (AJWx), 2000 U.S. Dist. LEXIS 5669, at *4 (March 31, 2000) is distinguishable on the same ground, assuming it even remains good law in light of *Kelly*. There, the defendant operated a Web site where it manually posted news articles taken from the plaintiffs' web sites. Plaintiffs, which charged users for access to archival copies of their articles, objected to the defendant's offering of that content for free *and demonstrated that they likely lost business because of the defendant's Web site*. *See id.* at *12-14. Defendant plainly was offering copies of plaintiffs' content as a free substitute for otherwise costly access to the plaintiffs' archives. *See id.* at *28-29 (defendant's articles "serve as substitutes for the originals found on plaintiffs' websites or in their newspapers."). It was that fact that led the court to find that defendant's use was not transformative.

GOOGLE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. CV-S-04-0413-RCJ-GWF

-7-

2741753_7.DOC

nature of [the use] rendered it presumptively unfair. No such evidentiary presumption is available to address either the first factor, the character and purpose of the use, or the fourth, market harm, in determining whether a transformative use, such as parody, is a fair one."). The presumption of unfair use upon which Field rests much of his argument is simply inapplicable given the transformative nature of Google's "Cached" links.

- Field asserts that the third fair use factor — the amount of the work used — weighs against a finding of fair use because Google allowed access to Field's entire works. *See* Field's Motion at 12-13. Field is wrong. As the Supreme Court made clear in *Sony*, copying of entire works should not weigh against a fair use finding where, as here, the new use serves a different function from the original and where the original work can be viewed by anyone free of charge. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 449-50 (1984) (affirming as a fair use the "time-shifting" of entire television shows).[8]

- Field claims that Google's "Cached" links should be presumed to have caused harm to the market for his work because Google's use is commercial. *See* Field's Motion at 13-14. The Supreme Court has made clear that it is reversible error to presume market harm based on a finding of a commercial use where, as here, the challenged use is transformative. *See Campbell*, 510 U.S. at 591 (reversing lower court's presumption of market harm based on commercial nature of use; "[W]hen . . . the second use is transformative, . . . market harm may not be so readily inferred.").

- Field claims "that unrestricted and widespread" use of Field's works in a manner similar to Google's "would absolutely supplant the potential market for the original works." *See* Field's Motion at 13-14. But as with so many of Field's assertions, this point too is unsupported by any evidence.[9]

Google's own motion for summary judgment on the fair use defense anticipated

---

[8] In the context of Internet search engines, the Ninth Circuit held in *Kelly* that "[i]f the secondary user only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her." *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820-21 (9th Cir. 2003). The *Kelly* court then concluded that a search engine's use of entire photographs was of no significance given its transformative purposes. *See id.* at 821; *see also Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 803 n.8 (9th Cir. 2003) (holding that "entire verbatim reproductions are justifiable where the purpose of the work differs from the original"); *Religious Tech. Ctr. v. Netcom On-Line Communications Servs., Inc.*, 907 F. Supp. 1361, 1380 (N.D. Cal. 1995) ("Netcom copied no more of plaintiffs' works than necessary to function as a Usenet server . . . . Netcom had no practical alternative way to carry out its socially useful purpose; a Usenet server must copy all files, since the prescreening of postings for potential copyright infringement is not feasible.").

[9] Field offers only the conclusory assertion that Google's "Cached" links deprive him of "control over the copying and dissemination of his works." *See* Field's Motion at 14. This position is contradicted by the record. At all times that pages containing copies of Field's works were accessible through Google's "Cached" links, he himself made the original works available for free to the world on his web site. Also, at all such times, Field had complete control over whether Google would allow users access to those pages through "Cached" links. Field simply chose not to exercise any of the various methods available to him to disable or remove the links.
(continued...)

GOOGLE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. CV-S-04-0413-RCJ-GWF

-8-

2741753_7.DOC

and refuted Field's contentions on the relevant issues. The facts bearing on the question of fair use are undisputed, and demonstrate that Google, not Field, is entitled to summary judgment on the defense.

### D. Field Is Not Entitled To Summary Judgment On The DMCA.

In 1998, Congress enacted the Digital Millennium Copyright Act ("DMCA") to address "[d]ifficult and controversial questions of copyright liability in the online world[.]" *See Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). "'[R]ather than embarking on a wholesale clarification of' the various doctrines of copyright liability, Congress opted 'to leave current law in its evolving state and, instead, to create a series of "safe harbors," for certain common activities of service providers.'" *See id.* (citing S. REP. 105-190, at 19 (1998)). The DMCA establishes four safe harbors which protect online service providers from damages for: (a) "Transitory Digital Network Communications" (Section 512(a)); (b) "System Caching" (Section 512(b)); (c) "Information Residing on Systems or Networks at Direction of Users" (Section 512(c)); and (d) "Information Location Tools" (Section 512(d)). *See* 17 U.S.C. § 512(a)-(d) (2005). With the DMCA, "Congress hoped to provide 'greater certainty to service providers concerning their legal exposure for infringements that may occur in the course of their activities.'" *See Ellison*, 357 F.3d at 1076 (citing S. REP. 105-190, at 20; H.R. REP. 105-551, pt. 2, at 49 (1998)).

Field purportedly moves for summary judgment on all four DMCA safe harbors. However, Field provides no analysis or support for his contention that he is entitled to summary judgment with respect to the Section 512(a), 512(c), and 512(d) safe harbors. As a consequence, Field's motion is insufficient on its face and should be rejected.

Field's discussion of the Section 512(b) safe harbor fares no better. While Field claims Google falls short of qualifying for the safe harbor, he fails to explain why any of the supposed deficiencies he identifies makes any difference under the actual language of the statute. Put

---

(...continued from previous page)
Field's claim of a lack of "control" over how Google used the pages of his site is baseless.

simply, the points Field raises are irrelevant. Field's motion is thus insufficient on its face and should be denied.[10]

### 1. Field Has Made No Effort At All To Support A Request For Summary Judgment On The DMCA Safe Harbors In Sections 512(a), 512(c), And 512(d).

Section 512 of the DMCA contains four separate safe harbors. Field purports to address the applicability of three of them — those provided by Sections 512(a), 512(c), and 512(d) — in a single sentence: "Other notions that Google's cache possibly falls within any of the other three DMCA safe harbors and [sic] will be addressed upon reply, should an argument in those regards be mustered." *See* Field's Motion at 17. Nowhere does Field discuss the requirements of Sections 512(a), 512(c), or 512(d), or explain why he believes that Google cannot rely upon them. Field's motion thus does not satisfy the most basic requirement of Rule 56 that he show that there is "no genuine issue of material fact and that [Field] is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(c). Accordingly, Field's motion with respect to these safe harbors should be denied out of hand. *See Nissan*, 210 F.3d at 1102 ("In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, No. SA CV 03-110-GLT (ANx), 2005 U.S. Dist. LEXIS 6567, at *34 (C.D. Cal. April 8, 2005) (denying plaintiff's motion for summary judgment of numerous affirmative defenses because the plaintiff's briefs did "not address the other affirmative defenses" and thus the plaintiff "has not met its burden of showing there is no genuine issue of material fact as to these affirmative defenses"). Nor should Field be permitted, as he suggests, to wait and

---

[10] Google did not seek summary judgment on the DMCA safe harbors — even though they will bar Field's claim for damages — because: (1) the DMCA would not resolve all of the issues since Field also seeks injunctive relief; and (2) Google's other grounds for summary judgment should dispose of all issues in the case. If necessary, Google will address the application of the DMCA via a motion to strike Field's damages claims, or a motion *in limine*, at a later date. *See* Google's Motion at 18 n.9.

address these arguments for the first time in his Reply. *See United States v. Boyce*, 148 F. Supp. 2d 1069, 1085 (S.D. Cal. 2001) ("[I]t is improper for a party to raise a new argument in a reply brief.") (citing *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992)).

        **2.    Field's Request For Summary Judgment That Google Does Not Qualify For The Section 512(b) Safe Harbor Is Misguided.**

Field's suit seeks damages from Google based upon Google's operation of its system cache. Because Google meets the requirements of the DMCA's safe harbor for caching under 17 U.S.C. § 512(b), any such monetary recovery is barred as a matter of law. *See* 17 U.S.C. § 512(b).[11] Hoping to overcome this immunity, Field improperly grafts additional requirements on to those actually set forth in the statute.

First, Field contends that "material — including Plaintiff's works, are [sic] not added to the Google cache as a result of Google serving as an intermediary between the originating website and the original user." *See* Field's Motion at 16. Field thus (inartfully) claims that only parties who serve as "intermediaries" between a Web site and a user can qualify for the 512(b) safe harbor. A review of Section 512(b), however, reveals no such requirement.[12]

Second, Field asserts that Google does not qualify for the safe harbor because information is only added to the Google cache if the Googlebot has crawled a particular page. *See* Field's Motion at 16-17. But Field nowhere explains why this is relevant to his motion. In

---

[11] The full text of Section 512(b) is attached hereto as Exhibit A.

[12] Section 512(b)(1) provides that Google is protected from infringement by reason of its "intermediate and temporary storage of material on a system . . . operated by" Google. *See* 17 U.S.C. § 512(b)(1) (Ex. A attached). There is no requirement in the language that Google serve as an intermediary. Field did not argue that Google fails to meet the actual requirement about "intermediate and temporary storage" for good reason. There can be no dispute that Google satisfies that requirement. *See* Brougher Decl. ¶7 ("The copy of a page in the Google system cache is only temporary: Google maintains a copy of a given Web page in the Google system cache only until the Googlebot next visits the particular Web page. This allows the Googlebot sufficient time to make it through the billions of Web pages and return to the particular Web page for re-indexing."); *see also* Field's Motion Ex. A (Brougher Depo.) at 68:19-69:2 (Google caches information for approximately 14 to 20 days). Google's storage qualifies as "intermediate and temporary storage" under the DMCA as a matter of law. *See Ellison v. Robertson*, 357 F.3d 1072, 1081 (9th Cir. 2004) (AOL's storage of online postings for 14 days was "transient" and "intermediate" for purposes of Section 512(a)).

fact, it is not.[13]

Finally, Field cryptically claims that "Google's caching of Plaintiff's works was not done to facilitate users who seek access to any of Plaintiff's originating web pages." *See* Field's Motion at 17. As best as Google can understand it, Field's assertion is false. One of Google's principal purposes in including Web pages in its cache is to enable subsequent users to access those pages. *See* Brougher Decl. ¶14; Levine Report ¶¶18-19. Thus, when users request access to pages directly from a site and are unable to obtain them for whatever reason, the pages are still available to them through Google's cache. Section 512(b) requires no more. *See* 17 U.S.C. § 512(b)(1)(C) (Ex. A attached) (requiring storage "for the purpose of making the material available to users who . . . request access to the material from [the originating site]").[14]

Field has failed to meet his burden of demonstrating that Google is not entitled to claim

---

[13] It is not even clear what provision of Section 512(b) Field believes is implicated (and not satisfied) by Google's use of the Googlebot. Section 512(b)(1)(B) requires that the material be transmitted from Plaintiff — "the person described in subparagraph (A)" — to a person other than Plaintiff, at the direction of the other person. That provision is undisputedly satisfied. Field transmitted the material in question — the pages from his Web site — to Google at the request of Google. *See* Brougher Decl. ¶4 ("The Googlebot, like other users of the Web, obtains copies of Web pages by sending requests to the server for the originating Web site and receiving the requested content in response."). Google, of course, is a person other than Field. Thus, Section 512(b)(1)(B) is met. Field may alternatively be claiming that Google's storage of the material is not carried out "through an automated technical process" as required by Section 512(b)(1)(C). Again, however, the argument would be baseless. *See* First Amended Compl. ¶19 (Field admits that "[t]hird-party Web page content is added to the Google cache by an automated software process."); *see also* Brougher Decl. ¶¶4-5 (discussing automated technical process).

[14] Section 512(b)(1)(C) requires that cache storage be "for the purpose of making the material available to users of the system or network who . . . request access to the material from the [original site]." *See* 17 U.S.C § 512(b)(1)(C) (Ex. A attached). It is unclear whether the word "from" in this sentence modifies the phrase "request access" or merely the word "material." But for purposes of this motion it does not matter, as Google's cache satisfies either interpretation. As noted, Google stores material in its cache for purposes of making it available to those who unsuccessfully *request access from* the original site. But Google's cache also plainly serves to make available *material from* the original site to those who request it. While the Court need not decide which of these interpretations is correct, Google notes that, later in the statute, when Congress speaks of a user accessing an originating site, it twice uses the word "directly" to modify the word "from." *See* 17 U.S.C. § 512(b)(2)(C) (Ex. A attached) ("if the material had been obtained by the subsequent users described in paragraph (1)(C) *directly from* that person."). The absence of the word "directly" in Section 512(b)(1)(C) suggests that storage need only be for the purpose of making available *material from* an originating site to those who request access to it.

GOOGLE'S OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Case No. CV-S-04-0413-RCJ-GWF

-12-

2741753_7.DOC

**CERTIFICATE OF MAILING**

I certify that a true and correct copy of the foregoing **GOOGLE INC.'S OPPOSITION TO PLAINTIFF BLAKE A. FILED'S MOTION FOR SUMMARY JUDGMENT** was served this _17_ day of October, 2005, by placing same in the United States mail, postage prepaid, addressed to the following:

Blake A. Field
9805 Double Rock Drive
Las Vegas, NV 89134
Telephone (702) 373-1022
Pro Se Plaintiff

                                                  _/s/ Judith B. Warren_
                                                  An employee of Snell & Wilmer, L.L.P.

84973.1

# EXHIBIT A

## SECTION 512(b) OF THE DMCA (17 U.S.C. § 512(b))

§ 512. Limitations on liability relating to material online

. . .

(b) System Caching.—

(1) Limitation on liability.— A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the intermediate and temporary storage of material on a system or network controlled or operated by or for the service provider in a case in which—

(A) the material is made available online by a person other than the service provider;

(B) the material is transmitted from the person described in subparagraph (A) through the system or network to a person other than the person described in subparagraph (A) at the direction of that other person; and

(C) the storage is carried out through an automatic technical process for the purpose of making the material available to users of the system or network who, after the material is transmitted as described in subparagraph (B), request access to the material from the person described in subparagraph (A), if the conditions set forth in paragraph (2) are met.

(2) Conditions.— The conditions referred to in paragraph (1) are that—

(A) the material described in paragraph (1) is transmitted to the subsequent users described in paragraph (1)(C) without modification to its content from the manner in which the material was transmitted from the person described in paragraph (1)(A);

(B) the service provider described in paragraph (1) complies with rules concerning the refreshing, reloading, or other updating of the material when specified by the person making the material available online in accordance with a generally accepted industry standard data communications protocol for the system or network through which that person makes the material available, except that this subparagraph applies only if those rules are not used by the person described in paragraph (1)(A) to prevent or unreasonably impair the intermediate storage to which this subsection applies;

(C) the service provider does not interfere with the ability of technology associated with the material to return to the person described in paragraph (1)(A) the information that would have been available to that person if the material had been obtained by the subsequent users described in paragraph (1)(C) directly from that person, except that this subparagraph applies only if that technology—

(i) does not significantly interfere with the performance of the provider's system or network or with the intermediate storage of the material;

(ii) is consistent with generally accepted industry standard communications protocols; and

(iii) does not extract information from the provider's system or network other than the information that would have been available to the person described in paragraph (1)(A) if the subsequent users had gained access to the material directly from that person;

(D) if the person described in paragraph (1)(A) has in effect a condition that a person must meet prior to having access to the material, such as a condition based on payment of a fee or provision of a password or other information, the service provider permits access to the stored material in significant part only to users of its system or network that have met those conditions and only in accordance with those conditions; and

(E) if the person described in paragraph (1)(A) makes that material available online without the authorization of the copyright owner of the material, the service provider responds expeditiously to remove, or disable access to, the material that is claimed to be infringing upon notification of claimed infringement as described in subsection (c)(3), except that this subparagraph applies only if—

(i) the material has previously been removed from the originating site or access to it has been disabled, or a court has ordered that the material be removed from the originating site or that access to the material on the originating site be disabled; and

(ii) the party giving the notification includes in the notification a statement confirming that the material has been removed from the originating site or access to it has been disabled or that a court has ordered that the material be removed from the originating site or that access to the material on the originating site be disabled.

. . .