ORIGINAL

Kelly A. Evans
Nevada Bar No. 7691
SNELL & WILMER L.L.P.
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89109
Telephone (702) 784-5200
Facsimile (702) 784-5400

David H. Kramer (Admitted Pro Hac Vice)
William O'Callaghan (Admitted Pro Hac Vice)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone (650) 493-9300
Facsimile (650) 493-6811

Attorneys for Defendant GOOGLE INC.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BLAKE A. FIELD, | No. CV-S-04-0413-RCJ-GWF |
|                Plaintiff, | |
| vs. | **GOOGLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| GOOGLE INC., | |
|                Defendant. | |
| AND RELATED COUNTERCLAIMS | |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................ 1

II.  ARGUMENT ............................................................................................................. 2

    A.   Field Has Not Established Copyright Infringement By Google. ........................... 2

            a.   Any Copying Resulting From A User Clicking On A "Cached" Link Is Copying By The User, Not Google. .................. 3

            b.   Offering "Cached" Links To Works Does Not Constitute Distribution Of Copies. .................................................... 4

        2.   Google's Automated Response To User Requests Does Not Constitute Copyright Infringement. .......................... 5

    B.   Google Is Entitled To Summary Judgment On Its Implied License Defense. ......... 7

        1.   Field Granted Google An Implied License By Choosing Not To Utilize Industry Standard Protocols. ................................... 7

        2.   Field Granted Google An Implied License Through His Affirmative Conduct. ........................................................ 8

    C.   Google Is Entitled To Summary Judgment On Its Separate Estoppel Defense. ............................................................................... 9

    D.   Google's Operation Of Its System Cache Is A Fair Use. ..................................... 11

        1.   *Kelly* Compels A Finding Of Fair Use. ................................................ 11

        2.   Worldwide Church of God v. Philadelphia Church of God Is Inapposite. ................................................................... 13

        3.   Fair Use Factors. ...................................................................... 14

            a.   Factor One:  Google's Use Is Transformative, And At Most Only Incidentally Commercial. .............................. 14

                i.   Google's Use Is Transformative. .................................... 14

                ii.   Whether Google's Use Is Commercial Is Of Little Relevance. ............................................................ 15

            b.   Factor Two:  The Nature Of Field's Made-For-Litigation Works Supports A Finding Of Fair Use. ..................... 16

            c.   Factor Three:  Google Used No More Of The Works Than Necessary For Its Transformative Use. ................... 17

            d.   Factor Four:  Google's "Cached" Links Had No Negative Effect On The Market For, Or Value Of, Field's Works. ............. 18

            e.   Google's Good Faith In Operating Its System Cache, And

Snell & Wilmer

L.L.P.

LAW OFFICES
1800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702) 784-5200

Field's Bad Faith In Manufacturing This Lawsuit, Weigh In
Favor Of Fair Use. ........................................................................... 19

4. Fair Use Summary. ..................................................................... 19

III. CONCLUSION.......................................................................................................... 20

2755668_1.DOC

Snell & Wilmer
L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702) 784-5200

Snell & Wilmer
L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702) 784-5200

## I.   INTRODUCTION

Plaintiff Blake Field's contrived suit should go no further.  Nowhere in his opposition brief does Field deny that he completely manufactured this copyright infringement claim to challenge Google's "Cached" links in the hopes of reaping a multi-million dollar, undeserved windfall.  More importantly, Field does not contest any of the facts that entitle Google to summary judgment on Field's claim.

Through its now undisputed explanation of its system cache and Field's machinations, Google has established that:

- Google automatically stores copies of Web pages in its cache in the process of creating an index of pages for its well-known search engine.  Field has conceded that in this process Google did not infringe any of the copyrighted works he created and displayed on Web pages within his Web site.  Indeed, Field has made clear that he desired to have Google make this copy and include the pages of his site within Google's index.

- In displaying search results of the pages in its index, Google often displays a "Cached" link to the archival copy of a page its has stored within its cache.

- If a user clicks on a "Cached" link for a page, instead of the more prominent link to the original Web page, the user initiates a process by which he or she creates and retrieves a copy of the page stored in Google's cache.  Google's involvement in this process is entirely automated and not volitional, thereby precluding any claim that Google itself is directly infringing any copyrighted work on the page.

- Industry standard protocols dictate that Web site operators must follow a simple procedure (include a "no-archive" meta-tag or an appropriate "robots.txt" file) to exclude their Web pages from search engine indexes and caches.

- Field failed to utilize these protocols for the pages of his site and took a number of additional, affirmative steps to induce Google to include his Web pages in its cache, fully expecting and desiring that Google display "Cached" links for those pages.

- Even if Google were somehow directly infringing copyrights through the creation or distribution of copies when a user clicks on a "Cached" link, the copy created has no impact on the market for the original page and contains no more of the page than is necessary to serve at least three transformative purposes:

  o Providing users (and operators) access to Web pages identified in Google's search results when the page is otherwise unavailable;

  o Assisting researchers in identifying changes made to Web pages over time; and

  o Enabling users to understand why a Web page was identified in response to a search request by highlighting the user's search terms as they appear on the page.

1    These facts and others set forth in Google's opening brief demonstrate that Field cannot make a

2    *prima facie* showing of infringement, establish Google's affirmative defenses of implied license

3    and estoppel, and warrant application of the fair use doctrine.

4         Field's opposition (along with his own motion for summary judgment) demonstrates that

5    he too believes these issues are ripe for summary judgment.  Rather than seeking to create triable

6    issues of fact, Field asks the Court to ignore controlling authority in favor of cases that are of

7    questionable relevance and precedence.  For example, Field's sole support for his infringement

8    argument relies on the *Webbworld* opinion, which has been thoroughly discredited.  Similarly, to

9    the extent Field discusses the Ninth Circuit's controlling fair use opinion in *Kelly* v. *Arriba,* he

10   would have the Court instead rely on a discussion from a prior opinion that was **withdrawn**, is

11   **superseded**, and is **uncitable.**

12        In sum, Field's opposition, much like his case, is a charade.  Because the undisputed facts

13   entitle Google to judgment as a matter of law, Google respectfully requests that the Court grant

14   its motion.

15   **II.    ARGUMENT**

16        **A.    Field Has Not Established Copyright Infringement By Google.**

17        In its motion, Google challenged Field to show that Google infringed his copyrighted

18   works through the operation of its system cache — specifically, by providing "Cached" links to

19   pages containing Field's works that were stored within Google's cache.[1]  While Field argues that

20

21        [1] Perhaps recognizing the infirmity of a claim challenging Google's display of
     "Cached" links, Field at times appears to suggest that Google is somehow liable for the copies
22   the Googlebot originally made of the pages of his site. *See* Field Opp. at 3:1-3, 4:4-8.  If he is
     taking such a position, it is utterly frivolous.  In his pleadings and through discovery, Field
23   made it abundantly clear that he was not challenging the original copying of the Web pages
     into the cache needed to include the site in the Google index, but only Google's providing of
24   links to works once they were in the Google cache. *See* Field's First Amended Compl. for
     Copyright Infringement (Docket #5) ("Amended Compl."), ¶¶30-32.  In fact, Field expressly
25   conceded, as he must, that Google's operation of the Googlebot does not infringe Field's
     copyrights. *See* Field Depo. at 143:13-16 ("Q. So you don't object to Google's initial copying
26   of your web pages for purposes of creating the cache, do you?  A. That's correct.").
     Nor could he make an infringement claim, given his concession that he wanted the Googlebot
27   to crawl his Web site and make it available through the Google search engine. *See* Field's
     Answer to Counterclaims (Docket #23), ¶¶12, 14 (admitting that Field desired having his Web
28   site included in the Google index and took affirmative steps to ensure this result).  Indeed, in
     making its original copy of a Web page, the Googlebot is no different than any end-user who
                                                                                          (continued...)

Snell & Wilmer
L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702) 784-5200

1  Google both made and distributed copies of his works, he simply has not established direct

2  copyright infringement.[2]

3      **a.   Any Copying Resulting From A User Clicking On A "Cached"
             Link Is Copying By The User, Not Google.**
4

5      According to Field, Google reproduced Web pages containing his copyrighted works

6  when users clicked on "Cached" links to those pages and downloaded their own copies.  The

7  undisputed record establishes, however, that the only copies made in this process are the copies

8  made *by the end user*.  *See* Brougher Decl. ¶8.  Google itself does not make copies and thus is

9  not liable as a direct copyright infringer.  *See Religious Tech. Ctr. v. Netcom On-Line*

10 *Communications Servs., Inc.*, 907 F. Supp. 1361, 1371-73 (N.D. Cal. 1995) ("*Netcom*") (finding

11 no direct infringement where third parties cause the copying to occur on an automated system);

12 *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 555-56 (4th Cir. 2004) ("*LoopNet*")

13 (applying *Netcom* holding to Web site where submitted real estate listings were reviewed and

14 posted following brief review by defendant); *Sega Enters. Ltd. v. MAPHIA*, 948 F. Supp. 923,

15 932 (N.D. Cal. 1996) ("*Sega*") (applying *Netcom* holding to operation of bulletin board service

16 containing infringing works).

17     Field completely ignores *Netcom* and *Loopnet*; even he recognizes them as squarely on

18 point.  Field's attempt to distinguish Google's third case, *Sega*, is unpersuasive.  Field notes that

19 the defendant in *Sega* did not itself place a copy of the material at issue onto its computer

20 system.  He claims, by contrast, that Google itself originally "uploaded" the pages containing his

21 works to its cache.  *See* Field's Opposition Brief ("Field Opp.") at 4.  Field's distinction is

22 without a difference.  Field does not challenge the propriety of Google's original copying of the

23 content onto its computers.  *See supra* at 2 n.1.  Like the bulletin board operator in *Sega*, Google

24 ───────────────────────

25     (...continued from previous page)
   visits a page and thereby makes a copy of it.  *See* Field Depo. at 143:17-23.

26     [2] Field has never asserted, and could not establish, that Google is liable for *indirect*
   copyright infringement.  *See* Amended Compl., ¶¶26-39 (alleging only direct infringement).  The

27 record is devoid of any evidence of direct infringement by a third party, or of any evidence
   supporting the multiple additional elements for a claim against Google of contributory

28 infringement or vicarious liability.  *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, __
   U.S. __, 125 S. Ct. 2764, 2776 (2005) (describing requirements for indirect infringement).

Snell & Wilmer
L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702) 784-5200

1    possesses an initial copy of content on its computers that was not the product of its own

2    infringement. Field, like the plaintiff in *Sega*, instead challenges the subsequent copies

3    downloaded by end users from a defendant's computers. Google, like the bulletin board operator

4    in *Sega*, does not itself make those additional copies or directly infringe copyrights when end

5    users make them. *See Sega*, 948 F. Supp. at 931-32. As a matter of law, Google did not directly

6    infringe Field's copyrights by allowing end users to download copies from its computers.

        **b.**    **Offering "Cached" Links To Works Does Not Constitute Distribution Of Copies.**

9    Field argues that by making his works available through "Cached" links, Google directly

10   infringes his exclusive right to "distribute copies." *See* Field Opp. at 2-3. He cites no authority

11   for this proposition, and *UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re*

12   *Napster)*, 377 F. Supp. 2d 796, 803 (C.D. Cal. 2005), holds otherwise. As that case explains,

13   providing an electronic link to a copyrighted work does not constitute distribution of copies of

14   that work. *See id.* (holding that copyright infringement requires actual transfer of a copy of a

15   copyrighted work; merely providing links through which users could access copyrighted works is

16   not direct infringement). Field tries to distinguish *In re Napster* by claiming that Google —

17   unlike Napster — hosts content and allows that content to be accessed by end users. Again,

18   Field's purported distinction is inapposite. The *In re Napster* court was not concerned with

19   where the electronic content at issued resided; its concern was whether the defendant was

20   distributing copies of the content merely by making it accessible to others.

21   A copyright holder has the exclusive right to "distribute copies or phonorecords of the

22   copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or

23   lending." *See* 17 U.S.C. § 106(3) (2005). The Copyright Act thus precludes a party who

24   possesses *copies* of a work from giving *those copies* to others. A party who possesses a copy of

25   a work and merely makes it available to others so that they may make their own copy does not

26   violate the distribution right.[3] This does not constitute distributing "copies" under the Copyright

---

[3] To be clear, that party may be assisting others in their creation of copies (authorized or not), but questions of indirect copyright infringement are not presently before the Court.

Snell & Wilmer
L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702) 784-5200

1  Act. *See* 17 U.S.C. § 101 (2005) ("Copies" defined as "material objects, other than

2  phonorecords, in which a work is fixed by any method now known or later developed and from

3  which the work can be perceived, reproduced, or otherwise communicated, either directly or with

4  the aid of a machine or device."). In sum, Google does not, by providing "Cached" links to

5  copies of Web pages stored in its cache, "distribute copies" of those pages within the meaning of

6  the Copyright Act.

7              **2.    Google's Automated Response To User Requests Does Not Constitute**
                       **Copyright Infringement.**
8

9        Even if Field could attribute either copying or distribution of copies to Google, his

10  infringement claim would still fail because Field has not offered any evidence of volitional

11  conduct by Google. Any copying or distribution Field could identify would undeniably take the

12  form of an automated response by a Google computer to a user who clicks on a "Cached" link.

13  The seminal *Netcom* decision and its progeny establish that such non-volitional conduct by a

14  machine in automatically transmitting content to third parties at their request does not constitute

15  direct infringement by the operator of the machine. *See Netcom,* 907 F. Supp. at 1369-70.

16  Netcom operated a system that automatically copied users' "Usenet" newsgroup postings onto

17  Netcom's computers, and then allowed users to retrieve copies of those postings from those

18  computers. In holding that Netcom did not itself engage in any direct infringement by operating

19  this system, the court stated:

20              Although copyright is a strict liability statute, there should still be some element of
                volition or causation which is lacking where a defendant's system is merely used to
21              create a copy by a third party.

22  *Netcom*, 907 F. Supp. at 1369-70. Because Netcom's system was automated, Netcom was not

23  liable for direct infringement of the plaintiff's copyrights.

24        Like the system in *Netcom*, Google's system automatically allows the user, at the user's

25  request, to access copies of Web pages stored on Google's computers. Absent evidence of

26  volitional conduct by Google in the process by which the user obtains its copy, Google's

27  operation of this system does not directly infringe copyrights on the works that users request and

28  retrieve. *See id.; see also LoopNet,* 373 F.3d at 549-52 (affirming judgment of no direct

Snell & Wilmer
L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702) 784-5200

1    infringement in favor of operator of system on which content was automatically uploaded and

2    downloaded); *Sega*, 948 F. Supp. at 932; *Marobie-FL, Inc. v. Nat'l Assn. of Fire Equip. Distribs.*

3    *and Northwest Nexus, Inc.*, 983 F. Supp. 1167, 1176-79 (N.D. Ill. 1997); *Newborn v. YAHOO!,*

4    *Inc.*, No. Civ. A. 04-659 (RBW), 2005 WL 2416336 (D.D.C. Sept. 27, 2005), at 5 n.3 (citing

5    *Loopnet* and dismissing copyright infringement claim against search engines based on lack of

6    volitional conduct).

7         Field ignores this leading line of cases, which undermines his position, and instead relies

8    upon the now-discredited decision in *Playboy Enters. v. Webbworld, Inc.*, 991 F. Supp 543 (N.D.

9    Tex. 1997) ("*Webbworld*"). This is doubly mistaken.

10        As noted, *Webbworld* is of "questionable" reasoning, and of dubious continued

11   validity. A number of articles considering *Webbworld* have criticized its logic. *See, e.g.,*

12   EDWARD A. CAVAZOS & COE F. MILES, *Intellectual Property on the WWW*, 576 PLI/Pat 559,

13   *572 n.70 (1999) (calling *Webbworld*'s reasoning "questionable," as it conflates direct and

14   indirect infringement liability); DAVID L. HAYES,*Computer and Internet Lawyer* (October

15   2002) at 1 & n.9 (suggesting Congress may have overruled *Frena* and *Webbworld* cases).

16   *Webbworld* follows the reasoning of the earlier, pre-*Netcom* decision in *Playboy Enters., Inc.*

17   *v. Frena*, 839 F. Supp. 1552 (M.D. Fla. 1993) ("*Frena*"), which was expressly criticized by

18   Congress. In citing the *Netcom* decision with approval, Congress stated that the *Frena* line of

19   cases has been overruled.[4] By contrast, there can be no doubt that the *Netcom* line of cases,

20   relied upon by Google, is the law of the land. *See ALS Scan v. Remarq Communities, Inc.*, 239

21   F.3d 619, 622 (4th Cir. 2001) (finding "the *Netcom* court reasoning more persuasive" than that

22   of *Frena*).[5]

23

24        [4] *See* 3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 12B.01[A][1]
     at 12B-12 to -13(2005) (noting that the DMCA "overrules those aspects of *Playboy Enterprises,*
25   *Inc. v. Frena*" holding that automated acts by service providers constitute direct infringement)
     (quoting H. Rep. (DMCA), p. 11)).

26        [5] The leading copyright treatise fully endorsed *Netcom*, saying "the judge demonstrated
     mastery of both the technology and the nuances of the law." 3 NIMMER ON COPYRIGHT,
27   12B.01[A][1] at 12B-7 (2005). As to its conclusion regarding direct infringement, Prof. Nimmer
     stated that Netcom's "logic is compelling," and noted that "Congress in fact endorsed much of
28   the *Netcom* decision when it later entered the fray." *Id.*

Snell & Wilmer
L.L.P.
LAW OFFICES
1800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702)784-5200

1    Regardless, *Webbworld* is easily distinguished.  There, the defendant actively sought out

2    and stored copyrighted material on its computer system without any authorization, express or

3    implied, from copyright holders.  *Webbworld*, 991 F. Supp. at 549-50.  By contrast, it is

4    undisputed that Google's initial collection and storage of Field's works in its cache was

5    authorized, as Google legitimately obtained its materials directly from Field.  *See supra* at 2 n.1.[6]

6        Whether because he could not demonstrate that Google copied or distributed copies of his

7    works, or because he could not show that Google engaged in volitional conduct, Field has failed

8    to establish a *prima facie* case of infringement.  Accordingly, Google is entitled to summary

9    judgment on his copyright claim.

10       **B.     Google Is Entitled To Summary Judgment On Its Implied License Defense.**

11       Given Field's inability to establish a direct infringement claim against Google, the Court

12   need not examine the various defenses that Google has asserted as alternative grounds for

13   summary judgment in its favor.  Nevertheless, Google has established each of these defenses as a

14   matter of law, starting with the defense of implied license.

15           **1.     Field Granted Google An Implied License By Choosing Not To Utilize
                  Industry Standard Protocols.**

16

17       Most of the communications on the Internet take place between automated computers and

18   thus industry standard protocols are necessary for the Internet to function properly.  *See* Levine

19   Report ¶25.  At issue in this case are long-standing protocols relating to indexing and caching

20   that search engines like Google necessarily rely upon to determine whether or not they can crawl,

21   index, or cache a Web page.  In his testimony, Dr. Levine made clear that it was reasonable for

22   Google to interpret Field's choice not to utilize these "industry standard and highly publicized"

23   protocols "as a grant of permission" from Field for Google to present "Cached" links to the

24

---

25       [6] Moreover, the defendant in *Webbworld* explicitly sought out information from certain
     online locations, such as "alt.mag.playboy," knowing that they likely contained unauthorized
26   images owned by the plaintiff.  *Id.* at 552-53.  Here, there is no allegation that Google's
     automated system is targeted at content that Google knows is displayed without the copyright
27   holder's authorization.  Rather, Google seeks to include in its search engine any content from the
     full scope of the World Wide Web, and its system is designed to allow objecting content owners
28   to prevent their works from being included and accessible through "Cached" links.

2755668_1.DOC

Snell & Wilmer
L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702) 784-5200

1  pages of his site. *See* Levine Report at ¶37 (explaining that "[a]bsent such implicit permission,

2  and a system by which permissions can be communicated (or denied) automatically, search

3  engines simply could not operate"). Dr. Levine's testimony is undisputed and by itself warrants

4  the conclusion that Google's conduct was impliedly licensed.[7]

5          **2.     Field Granted Google An Implied License Through His Affirmative
               Conduct.**

6

7          Field's affirmative conduct in submitting his Web site to Google and encouraging Google

8  to crawl, cache and index the site provides an additional ground for Google's implied license

9  defense.[8] As Google explained, courts have found that where a copyright holder delivers its

10  work to another party, the copyright holder has impliedly licensed the other party to make its

11  expected use of the work. *See Effects Assoc., Inc. v. Cohen,* 908 F.2d 555, 559 n.6 (9th Cir.

12  1990); *Herbert v. United States,* 36 Fed. Cl. 299, 310-311 (1996). Field attempts to distinguish

13  *Effects* and *Herbert* by arguing that those cases require that works be delivered, *and*

14  *commissioned,* by the defendant. *See* Field Opp. at 8-9. Neither case — nor the implied license

15  doctrine generally — contains such a requirement. Again, the test is simply whether the

16  copyright holder's conduct would reasonably allow the defendant to infer that permission is

17  given for the use in question. *See Herbert,* 36 Fed. Cl. at 310-11 (plaintiff's submission of book

18  _____

19          [7] Rather than offering evidence of his own, Field criticizes Google for failing to cite
   California or Nevada authority on implied licenses. That is sophistry. The cases Google cited in

20  support of the existence of an implied license are fully consistent with both California and
   Nevada law. *See Rokos v. Peck,* 182 Cal. App. 3d 604, 616 (1986) (implied contract may arise

21  from the promisor's conduct); Cal. Civ. Code § 1621 (same); *Western States Constr. v. Michoff,*
   108 Nev. 931, 938 (1992) (same). In any event, contrary to Field's assertion, Google did cite to

22  the Ninth Circuit's opinion in *Effects Assoc., Inc. v. Cohen,* 908 F.2d 555 (9th Cir. 1990) on the
   question of implied license. While Field inexplicably labels *Effects* "outmoded," it is still good

23  law, and was cited approvingly by the Ninth Circuit in *Foad,* which recognized it as consistent
   with California law. *See Foad Consulting Group, Inc. v. Musil Govan Azzalino,* 270 F.3d 821,

24  827 n.10 (9th Cir. 2001).

25          [8] Field takes the remarkable position that Google failed to provide evidence that he
   delivered his Web site to Google. Field Opp. at 9. In reality, Google identified numerous

26  affirmative steps that Field took to do just that. *See* Google's Motion at 14-15. Field also
   claims that his actions did not constitute "delivery" of his site because Google's corporate

27  designee was "unaware" of these activities. *See* Field Opp. at 9. Again, the position is
   specious. Whether or not Google's deponent was personally aware of Field's conduct is

28  irrelevant, and hardly means that *Google's* automated computer system was "unaware" of
   those activities.

2755668_1.DOC

Snell & Wilmer
L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702) 784-5200

1   to defendant knowing it intended to publish it "would lead a reasonable person . . . to believe that

2   publication . . . would be with his consent").

3       Field's conduct in submitting his Web site to Google is akin to that of a reader who mails

4   a "letter to the editor" of a newspaper, and then complains that he never gave express permission

5   for the newspaper to publish his letter. Just as the reader knows or should know that newspapers

6   publish letters addressed "Dear Editor," Website owners know or should know that search

7   engines will display "Cached" links to the pages of their sites unless told otherwise. Field's

8   delivery of his Web site to Google allows Google to assume, reasonably, that it could present

9   "Cached" links to the pages of the site. Field thus impliedly granted Google a license to do so.[9]

10      **C.   Google Is Entitled To Summary Judgment On Its Separate Estoppel
             Defense.**

11

12      Contrary to Field's contention, Google's estoppel defense is distinct from its implied

13  license defense, although both lead to the conclusion that Field's claim cannot proceed.

14      Field does not contest Google's proof on three of the four elements of equitable

15  estoppel. *See* Google's Motion at 25. Indeed, Field offers no evidence of his own on the

16  question of estoppel. His *arguments* on the issue relate exclusively to the second element —

17  whether Google had a right to act as it did based upon Field's conduct.

18      According to Field — who cites two early twentieth-century, non-copyright cases —

19  estoppel cannot arise from a plaintiff's silence unless the plaintiff had a duty to speak. *See* Field

20  Opp. at 6 (citing *Wisler v. Lawler*, 189 U.S. 260, 270 (1903); *James v. Nelson*, 90 F.2d 910 (9th

21  Cir. 1937)). Field ignores more recent decisions that have elaborated on when a copyright owner

22

23      [9] As discussed in Google's opening brief, Google was also impliedly licensed to
24  provide to Field copies of his own works because it was "Field himself [who] was the direct
    cause of and exclusively responsible for what he characterizes as Google's copying and
25  distribution of his works." *See* Google's Motion at 24. Field ***did not respond at all*** to this
    additional basis for Google's implied license defense. Field would have nothing to say. It
26  simply makes no sense for Field to argue that Google infringed Field's copyrights by allowing
    Field to access and retrieve a copy of his own works. Indeed, for the same reasons, the court
    could alternatively find that Field has failed to carry his burden of establishing direct copyright
27  infringement. Where the claimed copying and distribution of works came at the direct request
    and instruction of the copyright holder, there has been no violation of the copyright holder's
28  rights. *See* Google's Motion at 24 n.15.

Snell & Wilmer
L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702) 784-5200

1   has a duty to speak.  As they make plain, the "duty to speak" is not a legal duty, but rather "a

2   duty of good faith."  *See DeCarlo v. Archie Comic Publ'ns, Inc.*, 127 F. Supp. 2d 497, 510

3   (S.D.N.Y. 2001) (holding that plaintiff was estopped from asserting copyrights against

4   defendant).  The Court in *DeCarlo* explained:

5       [W]hen one party in a relationship with another has an opportunity to speak in
        order to avoid harm or injury to the other party and fails to do so to the ultimate
6       prejudice of the other party, he will be estopped from relying thereafter on that
        relationship.
7

8   127 F. Supp. 2d at 510 (quoting *CBS, Inc. v. Stokely-Van Camp, Inc.*, 522 F.2d 369 (2d. Cir.

9   1975)).

10      In *Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944 (S.D.N.Y. 1997), the Court

11  applied similar reasoning to find an estoppel.  There, the original copyright owner (Lehman

12  Brothers) sold some of its assets to the defendant (Smith Barney).  *Id.* at 946.  Smith Barney

13  mistakenly believed that the asset purchase agreement included the rights to a software system.

14  *See id.*  Lehman Brothers knew that Smith Barney was using the copyrighted software, but did

15  not object.  *See id.*  The court found that there was an estoppel because Lehman Brothers knew

16  of Smith Barney's use and remained silent.  *See id.* at 947.  Likewise, the courts in *Carson v.*

17  *Dynegy, Inc.*, 344 F.3d 446, 453-55 (5th Cir. 2003) and *Quinn v. City of Detroit*, 23 F. Supp. 2d

18  471, 752-53 (E.D. Mich. 1998) found estoppel when the copyright owners knew of the

19  defendant's allegedly infringing use and remained silent.[10]

20      Taken together, these cases demonstrate that, when a copyright owner knows that a

21  defendant believes that it has permission to use a copyrighted work, the copyright owner has a

22  good faith duty to object — or be estopped from asserting its copyrights against the defendant.

23  Those are precisely the undisputed facts in this case, and they establish Google's affirmative

24

25      [10] Strangely, Field asserts that *Quinn*, *Carson*, and *Keane* dealt with acquiescence, not
    estoppel.  Not so.  All three cases squarely held that the copyright owner was estopped from
26  asserting his copyrights.  *See Quinn*, 23 F. Supp. 2d at 752-53 ("Quinn is estopped from pursuing
    his infringement action against the City . . . ."); *Carson*, 344 F.3d at 453 ("Carson nevertheless is
27  estopped from the instant infringement claim . . . ."); *Keane*, 968 F. Supp. at 948 ("[T]he
    evidence clearly supports defendants' reasonable assumption that they were entitled to use [the
28  copyrighted software] and that they relied on that assumption to their detriment.").

Snell & Wilmer
L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702) 784-5200

1   defense of estoppel.[11]

2   **D.   Google's Operation Of Its System Cache Is A Fair Use.**

3   Field did not address Google's detailed analysis of the fair use factors in his opposition

4   brief. Instead, he cut and pasted six pages from his own summary judgment brief and added a

5   short introductory section which discusses, and misstates, the controlling Ninth Circuit decision

6   in *Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003) ("*Kelly*"). For the same reasons

7   presented in Google's Motion — and in its Opposition to Field's Motion — should the Court

8   find that Field has established a direct infringement claim against Google, it should further find

9   that Google's conduct is protected by the fair use doctrine.

10   **1.   *Kelly* Compels A Finding Of Fair Use.**

11   Field attempts to distinguish *Kelly*, arguing that the case turned on the fact that defendant

12   Arriba only used smaller "thumbnail" images in its search engine, whereas Google includes the

13   entire text of Web pages in the cache. While Arriba's thumbnails were reduced in size in

14   comparison to the originals, the Ninth Circuit focused on the transformative purpose of the

15   search engine and whether Arriba used more of the original work than was necessary to

16   accomplish that transformative purpose. *See Kelly*, 336 F.3d at 821. Because Arriba used no

17   more of the photographs than needed, the Ninth Circuit found fair use.

18   Field's implication — that *Kelly* held that copying the entirety of a work cannot be a fair

19   use — is baseless. In fact, the Ninth Circuit noted in *Kelly* that Arriba "did copy each of Kelly's

20   images as a whole," as copying of the entire photographs was necessary to create the thumbnails

21   and serve the purpose to which Arriba put them. *Id.* Thus, *Kelly* (along with a host of other

22   _____

23   [11] Field separately argues that he should not be estopped because Google could have set up its cached function as an "opt-in" system rather than an "opt-out" system. This argument

24   suffers from several flaws. First, the argument addresses what Field *would like* the standards to be, not application of the law of estoppel to the facts of this case. Second, even if Google could

25   unilaterally switch to an opt-in regime, the communication protocols at issue are *industry-wide* standards, so this would not affect the other search engines that would still abide by the

26   standards. *See* Google's Motion at 10-13; Levine Report ¶¶25-37. Third, Field does not demonstrate that an opt-in regime would be feasible. In fact, search engines must rely on "opt-

27   out" standards or face significant hurdles in helping people find information on the Web. Brougher Decl. ¶18; Levine Report ¶25. Indeed, the "no-archive" meta-tag assumes permission

28   to cache for good reason —Web site owners generally want search engines to cache their sites because of the benefits that caching provides. *See* Google's Motion at 6-10; Brougher Decl. ¶26.

*(left margin, vertical text)* Snell & Wilmer
L.L.P.
LAW OFFICES
1600 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(202) 784-5200

1    authorities) simply holds that fair use will generally be found where the scope of the defendant's

2    use is consistent with the transformative purposes of the use. *See Kelly*, 336 F.3d at 820-21;

3    *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 803 n.8 (9th Cir. 2003) ("*Mattel*");

4    *Netcom*, 907 F. Supp. at 1380; *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417,

5    449-50 (1984) ("*Sony*").

6          Here, to the extent that Google is deemed to have copied or distributed copies of Web

7    pages stored in its cache, its use of the full page is necessary to serve Google's transformative

8    purposes.  If Google did not use the full page, its cache could not (a) assist Web users by making

9    that content available when the Web site is unavailable for technical or other reasons; (b) assist

10   researchers and educators in the archival or comparative purposes of the Google "Cached" links;

11   and (c) offer highlighted search terms in cached copies of Web pages to allow users to

12   understand why a Web page was deemed germane. *See generally* Brougher Decl. ¶¶16-18; *see*

13   *also* Levine Report ¶¶15-20.  Accordingly, Google's use of Field's entire Web page is fully

14   consistent with a fair use. *See Sony*, 464 U.S. at 449-50 (finding fair use for time shifting of

15   entire television programs, as transformative purpose could not be accomplished by copying less

16   than the entire show); *Netcom*, 907 F. Supp. at 1380 ("Netcom copied no more of plaintiffs'

17   works than necessary to function as a Usenet server . . . . Netcom had no practical alternative

18   way to carry out its socially useful purpose;  a Usenet server must copy all files, since the

19   prescreening of postings for potential copyright infringement is not feasible.").

20         While Field would have the Court believe the facts in *Kelly* could not be more different

21   than those presented here, the similarity in fact patterns is overwhelming.  Like Google's system,

22   the search engine in *Kelly* crawled Web sites, made temporary copies of entire copyrighted

23   works from those Web sites, stored copies of that content on its servers, and made that content

24   available in response to user's search requests, along with links to the original Web page. *See*

25   *Kelly*, 336 F.3d at 815.  Like Google's system, "Arriba's use of the [copyrighted works] serves a

26   different function than [the copyright holder's] use — improving access to information on the

27   internet versus artistic expression." *See id.* at 819.  And, like Google's system, Arriba used as

28   much of the work as was necessary to accomplish its purpose.

Snell & Wilmer
L.L.P.
LAW OFFICES
3880 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702)784-5200

2755668_1.DOC

1  Displeased with the Ninth Circuit's *holding* in *Kelly*, Field incredibly cites an earlier

2  Ninth Circuit decision that was *withdrawn*. [12] He does so, supposedly, "not . . . for [its]

3  precedential value." *See* Field Opp. at 10:20-25. But if Field is not citing the withdrawn opinion

4  for its precedential value, there is no reason for him to have cited it at all. In reality, if anything

5  is to be gleaned from the Ninth's Circuit's withdrawal of the opinion, it is that the court would

6  likely repeat its rejection of conclusions that it took the extraordinary step of withdrawing —

7  conclusions that Field now urges this Court to adopt.

8          **2.     Worldwide Church of God v. Philadelphia Church of God Is
               Inapposite.**

9

10  Field rests his fair use argument almost exclusively upon a single case, *Worldwide*

11  *Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1115 (9th Cir. 2000)

12  ("*Worldwide Church*"). True to form, Field fails to mention that the Ninth Circuit in *Kelly*

13  expressly distinguished *Worldwide Church*, finding it had no application in the context of a

14  transformative use by an Internet search engine. In *Kelly*, the Ninth Circuit explained that it had

15  held:

16          that copying a religious book to create a new book for use by a different church
            was not transformative. The second church's use of the book was merely to make

17          use of the same book for another church audience. The court noted that "where
            the use is for the same intrinsic purpose as [the copyright holder's] . . . such use

18          seriously weakens a claimed fair use."

19  *Kelly*, 336 F.3d at 819 (quoting *Worldwide Church*, 227 F.3d at 1117 (alterations in *Kelly*)). It

20  then held that the search engine's transformative use at issue in *Kelly* rendered *Worldwide*

21  *Church* inapposite. The same distinction and conclusion are appropriate here. [13]

22

23          [12] In the order withdrawing and superseding the earlier *Kelly v. Arriba* opinion, the Ninth
     Circuit declared that the earlier opinion "may not be cited as precedent by or to this court or any

24  district court of the Ninth Circuit." *See Kelly*, 336 F.3d at 815. Field clearly recognized the
     impropriety of citing the case as evidenced by his feeble disclaimer. His decision to cite the case

25  in violation of the order is sanctionable.
          [13] Field further quotes *Worldwide Church*'s statement that the court had "found no

26  published case holding that fair use protected the verbatim copying, without criticism, of a
     written work in its entirety." Field Opp. at 16 (quoting *Worldwide Church*, 227 F.3d at 1120).

27  As noted, the Ninth Circuit was addressing verbatim copying that was not transformative.
     Verbatim copying has been held to be fair when needed for transformative uses such as in the

28  present case. *See, e.g.* cases cited in Section II.D.c.3, *infra*.

Snell & Wilmer
L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702) 784-5200

1    ### 3.    Fair Use Factors.

2       Google comprehensively addressed the fair use factors in its opening brief. For the sake

3    of completeness, Google discusses them again here, with a focus on Field's various arguments.

4              **a.    Factor One: Google's Use Is Transformative, And At Most**
                       **Only Incidentally Commercial.**

5

6       Both parties agree that the main focus of the first fair use factor is whether the allegedly

7    infringing use is transformative. *See* Field Opp. at 12 (citing *Campbell v. Acuff-Rose Music, Inc.*,

8    510 U.S. 569, 579 (1994) ("*Campbell*"); *see also* Google's Motion at 31 (same).

9              ### i.    Google's Use Is Transformative.

10      In this case, there can be no question that Google's use is highly transformative. Field's

11   "writings" — alleged literary works — arguably are intended to enrich others. The copies

12   accessible through Google's cache functionality, by contrast, serve entirely different objectives:

13   (i) enabling users to access content when the original page is inaccessible, (ii) allowing

14   researchers to detect changes that have been made to a particular Web page over time, and (iii)

15   allowing users to readily understand why a page was responsive to their query by highlighting

16   search terms. *See* Google's Motion at 6-9, 31-33. Because, as the Ninth Circuit has held, such

17   uses are clearly transformative, *see Kelly*, 336 F.3d at 818, Google's cache functionality is

18   similarly transformative. *See id.* at 818-20 (contrasting purpose of original artistic works with

19   search engine's "functions as a tool to help index and improve access to images on the internet

20   and their related web sites").

21      Field's argument that Google's cache functionality is "superseding," *see* Field Opp. at 12,

22   is belied by the undisputed facts. There is no evidence whatsoever that "Cached" links substitute

23   for visits to original Web pages, much less evidence that *anyone* has ever used the Google cache

24   as a substitute for visiting the pages of *Field's* site. In truth, the evidence is entirely to the

25   contrary. *See, e.g.*, Levine Report ¶¶21-23. Millions of Web site owners, including major online

26   destinations, permit Google to provide "Cached" links to the pages of their sites; they could

27   automatically prevent those links in a matter of seconds. Plainly, they do not believe that clicks

28   on "Cached" links are any substitute for a visit to their original pages. Moreover, Google has

2755668_1.DOC

Snell & Wilmer
L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702)784-5200

1  included design features within its cache functionality to feature the original page, and ensure

2  that those who wish to access it can easily do so. *See* Google's Motion at 5; *see also* Brougher

3  Decl. ¶¶9-10 & Ex. 1. In sum, the undisputed evidence demonstrates that Google serves different

4  and socially important purposes in offering access to pages through "Cached" links. *See id.*

5  ¶¶16-20.

6       Field's assertion that fair use is precluded because Google's cache contains a verbatim

7  copy of Field's work is expressly contradicted by controlling precedent. As the Supreme Court

8  long ago made clear, copying of entire works should not weigh against fair use where the new

9  use serves a different function from the original, and the original work can be viewed by anyone

10 free of charge. *See Sony*, 464 U.S. at 449-50 (affirming as a fair use the "time-shifting" of entire

11 television shows); *see also Kelly*, 336 F.3d at 821. Google's "Cached" links present the same

12 situation. Accordingly, the first fair use factor strongly weighs in Google's favor.

13                   **ii.**    **Whether Google's Use Is Commercial Is Of Little**

14                        **Relevance.**

15      Field next argues that Google's cache functionality is commercial, and thus not a fair

16 use. Field is mistaken.

17      Though Field cites *Campbell* with respect to the transformative use issue, *see* Field Opp.

18 at 12, he ignores its clear teaching on the relevance of whether a use is commercial. In

19 *Campbell*, the Supreme Court noted that many of the fair use examples described by Congress in

20 the Copyright Act itself (*e.g.*, news reporting) are conducted for profit in this country, and stated

21 that "the more transformative the new work, the less will be the significance of other factors,

22 like commercialism, that may weigh against a finding of fair use." *See Campbell,* 510 U.S. at

23 579. Accordingly, the Supreme Court held that there is no presumption of unfair use based on

24 the commercial nature of transformative uses. *See id.* at 594. The alleged commercial nature of

25 the Google cache is of little relevance here.

26      Moreover, Field's contention that Google's cache functionality is directly commercial is

27 meritless. *See* Field Opp. at 13-14. In fact, the undisputed evidence shows that Google makes

28 no money from displaying "Cached" links to Web pages, and certainly made no money from

Snell & Wilmer
L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702) 784-5200

1   displaying "Cached" links to Field's pages. *See* Brougher Decl. ¶13; *see also* Field Motion Ex.

2   D. Like the home user's private, time-shifting of television programs which the Supreme Court

3   held to be a non-commercial fair use in the *Sony* case, *see Sony*, 464 U.S. at 449, the use of

4   Google's free cache functionality by Web users is similarly not directly commercial.

5          The Ninth Circuit described the use in *Kelly*, where advertising accompanied the display

6   of images in Arriba's search engine, as at most "incidental[ly]" commercial. *See Kelly*, 336 F.3d

7   at 818. Google's use of Field's works — without accompanying advertising — is then, as in

8   *Kelly*, incidentally commercial at best. And, as in *Kelly*, the fact that Google is a commercial

9   enterprise is of only minor relevance in the fair use analysis. The transformative purpose of

10  Google's use is considerably more important in the overall balancing and demonstrates that the

11  first fair use factor weighs heavily in Google's favor. *See id*, at 818.

      **b.**    **Factor Two: The Nature Of Field's Made-For-Litigation Works Supports A Finding Of Fair Use.**

14         Field asserts that his works are "fictional [and] creative," arguing that the second fair use

15  factor, the nature of the work, weighs against a finding of fair use. *See* Field Opp. at 14-15.

16  Field's simplistic analysis is insufficient.

17         As an initial matter, in assessing this factor, the Ninth Circuit looks at both whether the

18  works were "creative" and whether they were published. *See* Google's Motion at 35. Here,

19  Field manufactured his fifty-one "works" in just three days as part of his litigation jackpot

20  strategy. *See* O'Callaghan Decl. Ex. 2 at 2 (Plaintiff's Answer to Interrogatory No. 5); *see also*

21  Field Depo. at 141:15-24. Further, Field published his works on the Internet, making them

22  available to the world free of charge. These made-for-litigation, freely-available works are

23  certainly entitled to less protection than the artistic photographic works at issue in *Kelly*, or the

24  short story at issue in *Stewart v. Abend*, 495 U.S. 207 (1990), on which Field relies.

25         In any event, in cases involving transformative uses such as Google's, the second fair use

26  factor has been described as "not . . . terribly significant in the overall fair use balancing," *see*

27  *Mattel*, 353 F.3d at 803, and "not much help," *see Campbell*, 510 U.S. at 586. As such, this

28  factor is of only minor relevance and should not weigh against a fair use finding.

Snell & Wilmer
L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702)784-5200

**c.    Factor Three:  Google Used No More Of The Works Than Necessary For Its Transformative Use.**

Field asserts that the third factor — the amount and substantiality of the portion used in relation to the copyrighted work as a whole — weighs against a finding of fair use because Google allows access to Field's entire works through its "Cached" links. *See* Field Opp. at 15. Once again, Field's analysis is misguided and misleading.

As noted, the Supreme Court made clear in *Sony* that copying of entire works should not weigh against a fair use finding where the new use serves a different function from the original and where the original work can be viewed by anyone free of charge. *See Sony*, 464 U.S. at 449-50 (affirming as a fair use the "time-shifting" of entire television shows).[14]  As discussed above, in the context of Internet search engines, *Kelly* held that "the extent of permissible copying varies with the purpose and character of the use" and that "[i]f the secondary user only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her." *See Kelly*, 336 F.3d at 820-821; *see also Mattel*, 353 F.3d at 804 n.8 (holding that "entire verbatim reproductions are justifiable where the purpose of the work differs from the original"); *Netcom*, 907 F. Supp. at 1380 ("Netcom copied no more of plaintiffs' works than necessary to function as a Usenet server. . . . [A] Usenet server must copy all files, since the prescreening of postings for potential copyright infringement is not feasible.").[15]

---

[14] In a *non-sequitur*, Field asserts that Google cannot rely on *Sony*'s discussion of fair use because that case involved contributory infringement. *See* Field Opp. at 15.  In fact, the Supreme Court analyzed whether (non-party) home users who engaged in time-shifting were *direct* infringers. *See Sony*, 464 U.S. at 447-55 (finding home users engaged in time-shifting make a non-infringing fair use of plaintiffs' works, creating a substantial non-infringing use for the accused device).  That the discussion was in the context of a contributory infringement analysis is simply irrelevant. Field further asserts that *Sony*'s fair use analysis has never been applied to a case of direct infringement like the one here. *See* Field Opp. at 15. He is wrong again. *Sony* has been cited in countless decisions analyzing whether a defendant's use is a fair use, both in the context of direct and indirect infringement. *See, e.g., Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1526 (9th Cir. 1993) (citing *Sony* and finding fair use by competitor who copied entirety of work for transformative purpose of reverse engineering); *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148 (9th Cir. 1986); *Netcom*, 907 F. Supp. at 1379-80; *Lewis Galoob Toys, Inc. v. Nintendo of Am.*, 780 F. Supp. 1283, 1294 (N.D. Cal. 1991).

[15] The case cited by Field on this point, *Hustler*, 796 F.2d at 1155, actually supports a finding of fair use. In it, the Ninth Circuit noted that "*Sony Corp.* teaches us that the copying of an entire work does not preclude fair use *per se*." *See id.*  The Ninth Circuit went on to find that the use in question was "fair." *See id.* at 1155-56.

Snell & Wilmer
L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702) 784-5200

1     Just like the broadcasters in *Sony* and the photographer in *Kelly*, Field made his content

2     available to anyone, free of charge. Also like the fair uses in *Sony* and *Kelly*, Google's use of

3     entire Web pages (by allowing access to them through "Cached" links) is essential for the

4     valuable, transformative purposes of the use. *See* Google's Motion at 6-10. Again, these

5     purposes could not be fulfilled if Google allowed access to only portions of the Web pages. *See*

6     *id.* at 37. As both *Sony* and *Kelly* make clear, the third factor is neutral despite the fact that

7     Google allowed access through "Cached" links to the entirety of Field's works. *See Sony*, 464

8     U.S. at 448-50; *Kelly*, 336 F.2d at 821.

9                    **d.    Factor Four: Google's "Cached" Links Had No Negative
                           Effect On The Market For, Or Value Of, Field's Works.**
10

11    Field begins his discussion of the fourth fair use factor by wrongly contending that

12    market harm can be presumed in this case, allegedly because Google's use is commercial. *See*

13    Field Opp. at 16. As noted above, the Supreme Court has recently made clear that it is

14    reversible error to presume market harm based on a finding of a commercial use where, as

15    here, the use is transformative. *See Campbell*, 510 U.S. at 591 ("[W]hen . . . the second use is

16    transformative, . . . market harm may not be so readily inferred.").

17    Field's assertion that there is *actual* market harm in this case is preposterous. Field

18    simply asserts — without *any* evidentiary basis — that "[t]here is no question that unrestricted

19    and widespread" use of Field's works in a manner similar to Google's "would absolutely

20    supplant the potential market for the original works." *See* Field Opp. at 16. Such bald

21    assertions are insufficient to defeat Google's properly supported summary judgment motion.

22    *See* Fed. R. Civ. P. 56(e); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102

23    (9th Cir. 2000).[16]

24    _____

25       [16]  The closest Field comes to attempting to support his argument is his assertion that
      Google's activities would deprive Field of "control over the copying and dissemination of his
26    works." *See* Field's Motion at 14. This is not only unsupported, but also contradicted, by the
      record. As noted above, Field offers his content for free, placing no restrictions on access to his
27    works. *See* Google's Motion at 14. Thus, Field has already ceded a significant amount of
      control over the works. Nevertheless, Field still retains complete control over whether those
28    works will be accessible through Google's "Cached" links given the myriad ways in which he
      can direct Google not to present those links. *See* Google's Motion at 10-13. It is undisputed that
      (continued...)

Snell & Wilmer
L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702)784-5200

1    As shown in Google's Motion, Google's "Cached" links had no impact on the market

2    for Field's works, or on copyrighted works in general. *See* Google's Motion at 37-39.  The

3    Supreme Court has explained that it only considers the impact on markets "that creators of

4    original works would in general develop or license others to develop." *See Campbell*, 510

5    U.S. at 592.  Where there is no likely market for the challenged use of the plaintiff's works, the

6    fourth fair use factor favors the defendant. *See Mattel*, 353 F.3d at 806.  In this case, there is

7    no market for licensing search engines the right to allow access to Web pages through

8    "Cached" links, and such a market is unlikely ever to develop. *See* Google's Motion at 38-39.

9    In fact, if anything, the market works in the opposite manner, with content owners paying

10   some search engines for preferred listings. *See id.* at 39 n.20.  Accordingly, this factor favors a

11   finding of fair use.

       e.      **Google's Good Faith In Operating Its System Cache, And
Field's Bad Faith In Manufacturing This Lawsuit, Weigh In
Favor Of Fair Use.**

14   In addition to the four enumerated fair use factors, the Ninth Circuit has held that courts

15   may further consider whether an alleged infringer has acted in good faith as part of the fair use

16   inquiry. *See* Google's Motion at 40 (citing 17 U.S.C. § 107 and *Fisher v. Dees*, 794 F.2d 432,

17   436-37 (9th Cir. 1986)).  Field chose to ignore this additional consideration, apparently unwilling

18   or unable to defend his conduct.  Considering the equities — including the fact that Field's suit is

19   manufactured, that Google complies with numerous industry-standard means for Web site owners

20   to preclude their material from appearing in Google's "Cached" links, and that Google promptly

21   removes such material at the request of the Web site owner — there is no question that this

22   additional factor supports a finding of fair use. *See* Google's Motion at 40-41.

      **4.**      **Fair Use Summary.**

24   An analysis of the relevant factors leaves no doubt that Google's operation of its cache,

26   (...continued from previous page)
Google honors such requests.  In fact, Google promptly removed "Cached" links to pages
27   containing Field's works when it first learned of Field's objection.  Accordingly, Field's claim
that copyright owners lack "control" over how their content is used by the Google cache is
28   simply wrong.

Snell & Wilmer
L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702) 784-5200

1    and its alleged use of Field's works in this case, qualify as fair use.  The first and fourth

2    factors, described in case law as the most important, strongly favor a finding that Google's

3    transformative use is a fair use.  The second and third factors — which have been described as

4    less significant in the context of a transformative use — are, in any event, neutral at worst.

5    Finally, Google's good faith (and Field's bad faith) further supports a determination of fair

6    use.

7    **III.    CONCLUSION**

8            For the foregoing reasons, Google respectfully requests that the Court grant Google's

9    motion for summary judgment, holding that:  (1) Field has not established that Google

10   infringed his copyrights; (2) to the extent Google could be characterized as having made or

11   distributed copies of Field's works, Field impliedly licensed Google's conduct; (3) by virtue of

12   his acts and omissions, Field is estopped from claiming that Google infringed his copyrights;

13   and (4) Google's allegedly infringing activities are a fair use.

14

15   Dated:  October 31, 2005                          SNELL & WILMER L.L.P.

16

17                                             By:  _____

18                                                  Kelly A. Evans
                                                   Nevada Bar No. 7691
19                                                  3800 Howard Hughes Parkway, Suite 1000
                                                   Las Vegas, NV  89109
20
                                                   and
21
                                                   David H. Kramer
22                                                  William O'Callaghan
                                                   WILSON SONSINI GOODRICH & ROSATI
23                                                  650 Page Mill Road
                                                   Palo Alto, CA  94304-1050
24
                                                   Attorneys for GOOGLE INC.
25

26

27

28

## CERTIFICATE OF MAILING

I certify that a true and correct copy of the foregoing **GOOGLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** was served this $31$ day of October, 2005, by placing same in the United States mail, postage prepaid, addressed to the following:

Blake A. Field
9805 Double Rock Drive
Las Vegas, NV 89134
Telephone (702) 373-1022
Pro Se Plaintiff

An employee of Snell & Wilmer, L.L.P.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Snell & Wilmer
L.L.P.
LAW OFFICES
3800 HOWARD HUGHES PARKWAY, SUITE 1000
LAS VEGAS, NEVADA 89109
(702) 784-5200