**ORIGINAL**

1   Kelly A. Evans
    Nevada Bar No. 7691
2   SNELL & WILMER L.L.P.
    3800 Howard Hughes Parkway, Suite 1000
3   Las Vegas, NV 89109
    Telephone (702) 784-5200
4   Facsimile (702) 784-5400

5   David H. Kramer (Admitted Pro Hac Vice)
    William O'Callaghan (Admitted Pro Hac Vice)
6   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
7   650 Page Mill Road
    Palo Alto, CA 94304-1050
8   Telephone (650) 493-9300
    Facsimile (650) 493-6811

9   Attorneys for Defendant GOOGLE INC.

10              UNITED STATES DISTRICT COURT

11                 DISTRICT OF NEVADA

12

13  BLAKE A. FIELD,
                                          No.: CV-S-04-0413-RCJ-GWF
14          Plaintiff,

15  vs.
                                          **DECLARATION OF WILLIAM
16  GOOGLE INC.,                          O'CALLAGHAN IN SUPPORT OF
                                          GOOGLE'S MOTION FOR SUMMARY
17          Defendant.                     JUDGMENT**

18  ───────────────────────────

19  AND RELATED COUNTERCLAIMS

20

21  ───────────────────────────

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES

I, William O'Callaghan, declare as follows:

1.      I am an attorney at Wilson Sonsini Goodrich & Rosati, counsel of record for defendant and counterclaimant Google, Inc. ("Google") in the above-referenced matters. I have personal knowledge as to the facts contained herein and could competently testify thereto.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of relevant excerpts from the June 9, 2005 deposition of Plaintiff Blake A. Field.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of relevant excerpts from Plaintiff's Answers To Interrogatories Of Defendant Google, Inc.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of relevant excerpts from Plaintiff's Response To Requests For Admission Of Defendant Google, Inc.

5.      Attached hereto as **Exhibit 4** is a true and correct copy of a printout from http://www.robotstxt.org/wc/norobots.html, produced as G-000015 through G-000018.

6.      Attached hereto as **Exhibit 5** is a true and correct copy of a printout from http://www.google.com/remove.html, produced as G-000010 through G-000013.

7.      Attached hereto as **Exhibit 6** is a true and correct copy of a printout from http://www.google.com/webmasters/3.html, produced as G-000439 through G-000442.

8.      Attached hereto as **Exhibit 7** is a true and correct copy of an April 16, 2004 letter from Michael S. Kwun of Google to Blake A. Field, produced as G-000389.

9.      Attached hereto as **Exhibit 8** is a true and correct copy of a printout from FIELD 0001, containing a screen capture of Plaintiff's search for http://www.blakeswritings.com/Antiperspirant.html, produced by Plaintiff without bates-numbers.

10.     Attached hereto as **Exhibit 9** is a true and correct copy of a printout of http://search.yahoo.com/search?p=www.blakeswritings.com&sm=Yahoo%21+Search&fr=FP-tab-web-t&toggle=1&cop=&ei=UTF-8, which presents results for a search for "www.blakeswritings.com" on the Yahoo! search engine (available at http://www.yahoo.com).

11.     Attached hereto as **Exhibit 10** is a true and correct copy of a printout of http://216.109.125.130/search/cache?p=www.blakeswritings.com&sm=Yahoo%21+Search&tog

Snell & Wilmer
L.L.P.
LAW OFFICES

gle=1&ei=UTF-8&u=www.blakeswritings.com/BandT-
Shirt.html&d=URgCMWFUl.b4H&icp=1&.intl=us, which is the Web page presented when I
clicked on the "Cached" link for the second search result identified in Exhibit 10 (*e.g.*, Yahoo!'s
cache for http://www.blakeswritings.com/BandT-Shirt.html).

12.    Attached hereto as **Exhibit 11** is a true and correct copy of a printout of
http://search.msn.com/results.aspx?q=www.blakeswritings.com&FORM=QBHP, which
presents results for a search for "www.blakeswritings.com" on the MSN search engine
(available at http://search.msn.com/).

13.    Attached hereto as **Exhibit 12** is a true and correct copy of a printout of
http://cc.msnscache.com/cache.aspx?q=2258275074290&lang=en-US&FORM=CVRE3, which
is the Web page presented when I clicked on the "Cached" link for the third search result
identified in Exhibit 10 (*e.g.*, MSN's cache for http://www.blakeswritings.com/Dogbait.html).

14.    Attached hereto as **Exhibit 13** is a true and correct copy *Marvel Enter., Inc. v.*
*NCSoft Corp.*, CV 04-9253-RGK (PLAx), (March 9, 2005 C.D. Cal.).

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct. Executed on September 23, 2005, at Palo Alto, California.

_____
William O'Callaghan

Snell & Wilmer
L.L.P.
LAW OFFICES

## CERTIFICATE OF MAILING

I certify that a true and correct copy of the foregoing **DECLARATION OF WILLIAM O'CALLAGHAN IN SUPPORT OF GOOGLE'S MOTION FOR SUMMARY JUDGMENT** was served this ⟶27 day of September, 2005, by placing same in the United States mail, postage prepaid, addressed to the following:

> Blake A. Field
> 9805 Double Rock Drive
> Las Vegas, NV  89134
> Telephone (702) 373-1022
> Pro Se Plaintiff

An employee of Snell & Wilmer, L.L.P.

84973.1

1

## CERTIFICATE OF MAILING

2    I certify that a true and correct copy of the foregoing DECLARATION OF WILLIAM
O'CALLAGHAN IN SUPPORT OF GOOGLE INC.'S MOTION FOR SUMMARY
3    JUDGMENT was served this ___3___ day of November, 2005, by placing same in the United
States mail, postage prepaid, addressed to the following:

4

5    Blake A. Field
9805 Double Rock Drive
Las Vegas, NV  89134
6    Telephone (702) 373-1022
Pro Se Plaintiff

7

8

9                                    _Judith D. Warren_
                                     An employee of Snell & Wilmer, L.L.P.
10

11   84973.1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

**CERTIFIED COPY**

BLAKE A. FIELD,

              Plaintiff,

      vs.

GOOGLE, INC.,

              Defendant.

CASE NO. CV-S-04-0413

VIDEOTAPE DEPOSITION OF BLAKE A. FIELD

LAS VEGAS, NEVADA

THURSDAY, JUNE 9, 2005

REPORTED BY:  CARRE LEWIS, CCR NO. 497

JOB NO. 1-34017



COURT REPORTING • DEPOSITORIES • DOCUMENT IMAGING • TRIAL PRESENTATIONS

1640 W. Alta Drive, Suite 4, Las Vegas, Nevada 89106 • 702.648.2595 • Fax: 702.631.7351 • Toll Free 1.800.330.1112
www.litigation-services.net • www.documentdepository.com

1  the best of my recollection.

2      Q.   So on or after January 20th, 2004 is when

3  the site went live is the best of your recollection?

4      A.   Yes.

5      Q.   And when we are talking about after, do you

6  know, was the site live by February 20th of 2004?

7      A.   Yeah, I -- I believe it was certainly live

8  by February 20, 2004.

9      Q.   Okay.  So within that month's time frame

10 you believe the site went live?

11     A.   Yeah.

12     Q.   Would you say by the end of January, say,

13 January 31st, 2004 the site was live?  I'm just

14 trying to get the range of --

15     A.   Yeah.  Yeah, I believe so.

16     Q.   Okay.  And when did you look at robots.txt?

17     A.   It wasn't until sometime after the site

18 went live.  I think maybe the -- sometime in early

19 February, mid February.

20     Q.   And why did you look at robots.txt?

21     A.   Because I had come to understand that there

22 was a text file called robots.txt that one could use

23 to ensure that crawler robots crawled one's site.

24     Q.   How did you come to that understanding?

25     A.   I believe I read it on the web on a tips

1   page.

2       Q.   So did you want robots to crawl on your web

3   site?

4       A.   I did.

5       Q.   And so you went to robots.txt to find out

6   how to instruct robots to crawl your web site?

7       A.   Robots.txt itself didn't instruct me, but,

8   yeah, I -- there was a -- there was a resource page

9   which instructed one how to utilize robots.txt.

10      Q.   Okay. Did you create a robots.txt file for

11  the web site?

12      A.   I did.

13      Q.   When?

14      A.   I don't recall the specific date that I did

15  that.  I believe it was sometime in early or mid

16  February 2004.

17      Q.   Why did you create a robots.txt file?

18      A.   To ensure that my site would be crawled by

19  the maximum number of crawlers so that it would be

20  contained the maximum amount of search engines and

21  reference material so that my site could have the

22  maximum exposure possible that could come from

23  automated crawling software.

24           Could we go off the record for a second?

25      Q.   Did you want to take a break?

1        Q.   Any others?

2        A.   And these other things that start with

3    meta.

4        Q.   Okay.  And aside from those that are shown

5    on G-000092, were you aware of any other meta tags?

6        A.   I believe that I was aware of certain other

7    meta tags.

8        Q.   What other meta tags were you aware of?

9        A.   The meta tags that one could insert on

10   one's page to -- I know where you are going with

11   this.  I was aware at the time of the meta tag that

12   one can insert on each of one's pages that can

13   specifically instruct Google not to cache one's

14   page.

15       Q.   How were you aware of meta tags that one

16   could add to one's web pages that could specifically

17   instruct Google not to cache one's web pages?

18       A.   In my investigation of the Google cache

19   mechanism, I think I had seen it before -- before

20   that, long -- back in 2001, I think is when I became

21   aware of -- of Google's cache and operators and

22   things like that.

23       Q.   How did you become of Google's cache in

24   2001?

25       A.   I believe a friend had pointed it out.

BLAKE A. FIELD - 06/09/05

1    don't -- no, I don't believe so.

2        Q.   What works are you referring to that

3    existed in December of 2003?

4        A.   I believe that the -- I believe that

5    For the Lotto existed, the Caddy, there are some

6    others that are posted there now, but I don't recall

7    specifically, that I can't recall.

8        Q.   Okay.  And so in December of 2003 you spent

9    10 to 15 hours investigating the Google cache with

10   the idea that if you subsequently created a web site

11   and Google cached pages from that web site, you

12   would bring an action against Google; is that the

13   idea?

14       A.   If Google infringed on the copyrights

15   relative to that site that, yes, indeed.

16       Q.   And so you were investigating prior to

17   creating a web site?

18       A.   That's correct.

19            MR. O'CALLAGHAN:  We need to take a tape

20   break.

21            THE VIDEOGRAPHER:  Off the video record at

22   11:48.

23            (Off of the record.)

24            THE VIDEOGRAPHER:  This is the beginning of

25   videotape number two in the continuing deposition of

BLAKE A. FIELD - 06/09/05

1     A.    Okay-doke.

2     Q.    Did you prepare those answers?

3     A.    I did.

4     Q.    Okay.  And if you can look at Request For

5  Admission Number 4, does that refresh your

6  recollection as to whether or not you were aware

7  that a no-archive meta tag could be used to prevent

8  Google from including a web page in the Google

9  system cache at the time you created

10  blakeswritings.com?

11     A.    There was never any doubt, to my

12  recollection.

13     Q.    Okay.  So you were aware of a no-archive

14  meta tag that could be used to prevent Google from

15  including a web page in a Google system cache at the

16  time you created blakeswritings.com?

17     A.    That's correct.

18     Q.    Okay.  Now, you knew of a process to remove

19  web sites from the Google system cache when you

20  created blakeswritings.com, didn't you?

21     A.    I believe it did.

22     Q.    And if you can look at your Response to

23  Requests For Admission Number 1 in Exhibit 8, I

24  believe that might refresh your recollection.

25     A.    It does.

1   distinction between a crawler accessing a site and a

2   search engine caching that site for distribution to

3   others.

4        Q.   Okay.  How did you learn about the means to

5   contact Google to request that the Google system

6   cache remove a web site such as blakeswritings.com?

7        A.   I believe it was buried somewhere on the

8   Google site.

9        Q.   So did you read that in connection with

10  your investigation in December 2003?

11       A.   I believe so, yes.

12       Q.   Okay.  But chose not to follow this

13  process; isn't that correct?

14       A.   Which process?

15       Q.   The process of contacting Google and

16  requesting that they not cache or allow cache copies

17  of web pages from blakeswritings.com to be

18  distributed?

19       A.   That is correct.

20       Q.   You also chose not to use the meta tag

21  no-archive with respect to your web pages; isn't

22  that correct?

23       A.   Well, seeing as it is not my duty to speak,

24  indeed, I did not.

25       Q.   Okay.  So you chose not to use the

BLAKE A. FIELD - 06/09/05

```
 1   no-archive meta tag on your web site; isn't that
 2   correct?
 3        A.    That's correct.
 4              MR. O'CALLAGHAN:   Mark this as the next
 5   exhibit, I believe it is Exhibit 9.
 6              (Exhibit 9 marked.)
 7   BY MR. O'CALLAGHAN:
 8        Q.    Handing you what's been marked as
 9   Defendants Exhibit 9, I will note for the record
10   this is a printout from google.com/remove.html,
11   Bates Number G-000010 through G-000013.  If you'd
12   take a minute to review these pages and let me know
13   when you are ready?
14        A.    I'm ready.
15        Q.    Okay.  Now, did you look at
16   google.com/remove.html before creating your web
17   site?
18        A.    I do believe I did.
19        Q.    So this was one of the things that you
20   looked at in December of 2003?
21        A.    Yes, I believe so.
22        Q.    Okay.  Do you see that Google identifies
23   how to use a robots.txt file to prevent Google or
24   other search engines from crawling your site under
25   the heading Remove Your Web Site near the bottom of
```

1   you the trouble.  I believe that the home page had a
2   hit counter on it and that the other pages did not.
3       Q.   Okay.  And so with respect to the web pages
4   that were cached by Google that are at issue in the
5   present litigation, they did not contain any
6   technology which returned information to you, did
7   they?
8       A.   At the time they were in the cache, I don't
9   believe they did.
10      Q.   Okay.  You didn't limit access to your work
11  that you published on the web, did you?
12      A.   How do you mean by "limit access"?
13      Q.   You didn't restrict anyone from coming and
14  looking at your information, did you?
15      A.   Any Internet user who came to the site
16  could view it.
17      Q.   And that includes all bots as well; isn't
18  that correct?
19      A.   That's correct.
20      Q.   When did you first publish your work, and
21  when I say "your work," I'm referring to the 51
22  works at issue in the present litigation?
23      A.   They were first published when they were
24  put on the web when the site went live.
25      Q.   And so your recollection is that's the end

1    copyright owners to identify or protect copyrighted

2    works and, (A), have been developed pursuant to a

3    broad consensus of copyright owners and service

4    providers in an open, fair and voluntary,

5    multi-industry standards process, (B), are available

6    to any person on reasonable and nondiscriminatory

7    terms, and, (C), do not impose substantial costs on

8    service providers or substantial burdens on their

9    systems or networks."

10          Do you know of any such standard technical

11   measures?

12        A.   I don't.

13        Q.   Okay.  And so if you don't know of any such

14   standard technical measures, wouldn't it follow,

15   then, that you didn't implement any such standard

16   technical measures on your web site?

17        A.   That would follow.

18        Q.   Now, when you set up blakeswritings.com,

19   you wanted Google to index blakeswritings.com; isn't

20   that right?

21        A.   To index it, yes.

22        Q.   Why?

23        A.   Because Google is a search engine that's

24   used by many people and I wanted to achieve the

25   maximum exposure to my web site.

1        Q.   Did you submit your web site to Google?

2        A.   I did.

3        Q.   How did you do that?

4        A.   Using a submittal bar.

5        Q.   And so it would be a bar in which you would

6   input your URL and say, Please add me to Google?

7        A.   Yes.

8        Q.   When did you do that?

9        A.   I don't specifically recall.  It was

10  shortly after the web site went live.

11            MR. O'CALLAGHAN:  Mark this as the next

12  exhibit.

13            (Exhibit 13 marked.)

14  BY MR. O'CALLAGHAN:

15       Q.   Handing you a document that's been Bates --

16  marked Defendant's Exhibit 13.  It is Bates labeled

17  G-000014.  On the top it says add your URL to

18  Google.  Please take a minute to review this

19  document.

20       A.   I have reviewed the document.

21       Q.   Is this the type of thing that you -- the

22  type of form that you filled out when you submitted

23  your web site to Google to be indexed by Google?

24       A.   No, I don't believe this is the -- this is

25  the form that was used.  Obviously this printout is

1   from May 11, 2005, and it is a different -- it

2   appears to me to be a different form that was used

3   than when I submitted my site.

4       Q.   What appears to be different to you from

5   the form that you used when you submitted your site?

6       A.   I believe that there was only a URL to

7   enter, and a button to click to submit it.  I don't

8   believe there was a section for comments and I don't

9   believe there was an optional part there.

10      Q.   Okay.  Did you do anything else to try to

11  get your web site indexed by Google?

12      A.   Well, I'm -- I did a lot of things to try

13  to get other -- every search engine that I could --

14  that I could think of to index the site.  So --

15      Q.   What did you do?

16      A.   Well, I had some -- I contracted with -- I

17  don't remember which company, for paid inclusion in

18  certain searches; I submitted my site to any search

19  engine that would take submittals that I could think

20  of; I had the broadest possible reach on robots.txt;

21  I utilized the Google AdWords program to have paid

22  links, paid clicks for pertinent search results in

23  Google.

24      Q.   Anything else?

25      A.   That's it.

BLAKE A. FIELD - 06/09/05

```
 1   guess every couple of few days, I get at least one
 2   or two hits from that, it would seem.
 3       Q.   When did you first use the Google search
 4   engine?
 5       A.   Oh, goodness.  A long time ago, I don't
 6   know, maybe -- perhaps not long after it first
 7   started.
 8       Q.   So is it your recollection that you used it
 9   before 2000?
10       A.   I don't know.  I don't -- I don't know.
11       Q.   How frequently do you use Google?
12       A.   Presently?
13       Q.   Yes.
14       A.   Not frequently at all.
15       Q.   How frequently did you use Google before
16   you filed the present lawsuit?
17       A.   I would say that I used it maybe for search
18   engine needs probably a third of the time.  One out
19   of every three times I would use a search engine, I
20   would use Google.
21       Q.   And would that be true --
22            MR. O'CALLAGHAN:  Can you hear me?
23            THE VIDEOGRAPHER:  Yes.
24            MR. O'CALLAGHAN:  Good, because my mic is
25   not on.
```

LITIGATION SERVICES & TECHNOLOGIES

BLAKE A. FIELD - 06/09/05

1    Q.   If you look at the second page, G-000002,
2    you see there is a section there that's labeled
3    Cached Links?
4    A.   I see it.
5    Q.   Can you review that and let me know if this
6    is similar to what you reviewed in December of 2003?
7    A.   I have looked at it, and I do believe it is
8    similar.  I can't say whether it is exactly the
9    same, but it appears similar.
10   Q.   Okay.  Do you see the last paragraph there
11   reads, "The cached link will be missing for sites
12   that have not been indexed, as well as for sites
13   whose owners have requested that we not cache their
14   content"?
15   A.   I do see that.
16   Q.   Do you recall having a similar
17   understanding when you investigated the Google cache
18   in December of 2003?
19   A.   When you ask "having a similar
20   understanding," whether similar language was
21   contained?
22   Q.   Do you recall having an understanding that
23   Google represented that a cached link will be
24   missing for sites that have not been indexed as well
25   as for sites whose owners have requested we not

LITIGATION SERVICES & TECHNOLOGIES

BLAKE A. FIELD - 06/09/05

1   cache their content in December of 2003?

2       A.   Yes.

3       Q.   So you are aware that Google provided users

4   to cache copies of many pages before you developed

5   your own web site?

6       A.   That's correct.

7       Q.   And you still sought to have your web site

8   indexed by Google?

9       A.   I sought to have my web site indexed by

10  Google and indexed only.

11      Q.   What do you mean "and indexed only"?

12      A.   I mean solely for it to be included in the

13  index.

14      Q.   But you didn't use a no-archive meta tag,

15  did you?

16      A.   I did not.

17      Q.   When did you first access the Google cache

18  for the works from blakeswritings.com?

19      A.   I don't recall specifically.  I believe it

20  was either February/March 2004.

21      Q.   Did you make a screen shot?

22      A.   Of the first time?

23      Q.   Yeah.

24      A.   I don't believe I did.

25      Q.   How many times have you accessed the Google

1    cache for works on blakeswritings.com?

2         A.    The works are no longer in the cache.

3         Q.    Right.  How many times did you access the

4    Google cache for works -- for works from

5    blakeswritings.com?

6         A.    For everything in total?

7         Q.    Yeah.

8         A.    I don't know.  Maybe each page cached I

9    would say less than five times.

10        Q.    Did you keep records?

11        A.    Of each time I visited?

12        Q.    Of each time you requested access to the

13   Google cache version of a work from

14   blakeswritings.com?

15        A.    Other than screen shots, no.

16        Q.    Did you make screen shots other than the

17   ones that you have produced in connection with the

18   present litigation?

19        A.    I have not.

20        Q.    So you made one set of screen shots of the

21   web pages from blakeswritings.com that you received

22   from the Google cache?

23        A.    That's correct.

24        Q.    Did you request access to where -- let me

25   start over.

BLAKE A. FIELD - 06/09/05

1   number of occurrences per work wasn't an issue.

2       Q.   So you didn't care if one or a hundred

3   thousand people requested access to the cache copy

4   of your web site; is that correct?

5       A.   Well, after the first infringement, the

6   point became moot.  So it wasn't an issue to me.

7       Q.   You had established what you believe was

8   infringement and that was good enough for you; is

9   that correct?

10      A.   That's correct.

11           MR. O'CALLAGHAN:  Let's go off the record.

12           THE VIDEOGRAPHER:  Off the record at 12:54.

13           (Off of the record for lunch recess.)

14           THE VIDEOGRAPHER:  Back on the video record

15   at 1:38.

16           MR. O'CALLAGHAN:  Good afternoon,

17   Mr. Field.

18           THE WITNESS:  Howdy.

19   BY MR. O'CALLAGHAN:

20      Q.   So you don't know if anyone other than you

21   accessed the Google cache version of the works from

22   blakeswritings.com, do you?

23      A.   Objection.  Calls for speculation.

24           No, I have no personal knowledge of any

25   other person.

BLAKE A. FIELD - 06/09/05

1   your page is relevant"?

2       A.   I do see that.

3       Q.   Do you agree with that?

4       A.   I agree, yes.

5       Q.   This is a benefit for web users, isn't it,

6   the ability to find out why a particular page was

7   turned up in response to a search request?

8       A.   It may be a benefit to a particular user.

9   I don't know the circumstances.

10      Q.   Have you earned any money from licensing

11  the works at issue of the present litigation?

12      A.   I have not.

13      Q.   Have you earned any money from the sale of

14  the works at issue in the present litigation?

15      A.   The sale of copies of the works?

16      Q.   Yes.

17      A.   No, I have not.

18      Q.   Have you made any money from any other

19  disposition of the works at issue in the present

20  litigation?

21      A.   I have made money through donations on my

22  web site, but other than that, no.

23      Q.   When you say donations on your web site,

24  are you talking about donations through PayPal?

25      A.   I am.

1     argumentative.

2           Further, the facts that were stated in

3     the -- in that scenario you just stated are

4     incorrect.  So maybe we can take each fact section

5     up to it.  The answer to your question as is stands

6     now is, that is incorrect.

7          Q.    What is incorrect about my question?

8          A.    I can't recall the exact sum of that

9     question, so perhaps we could go through it.

10         Q.    Okay.  Let's start with you created each of

11    these works in about 25 to 45 minutes prior to --

12         A.    That's correct, per work.

13         Q.    Right.

14         A.    Okay.

15         Q.    So you sent ever spent approximately 25 to

16    45 minutes per work?

17         A.    That's correct.

18         Q.    You created these works with the intent to

19    put them on a web site?

20         A.    That is correct.

21         Q.    You intended to create this web site with

22    these works in part so that you could challenge the

23    legality of the Google cache?

24         A.    That is correct.

25         Q.    And you intended to seek $50,000 in damages

BLAKE A. FIELD - 06/09/05

1    A.    Desperately trying to locate Exhibit 2.   I

2    have finally located Exhibit 2.

3    Q.    Okay.  And if you look at the section

4    headed the Google cache, it starts on page 2 of

5    Exhibit 2 --

6    A.    Yeah.

7    Q.    -- when you refer to the Google cache, are

8    you referring to the ability -- the portion of the

9    Google web site that allows users to access Google's

10   cached version of a particular web site?

11   A.    Right, the Google cache feature of the

12   Google web site.

13   Q.    So you don't object to Google's initial

14   copying of your web pages for purposes of creating

15   the Google index, do you?

16   A.    That's correct.

17   Q.    And that's because the Google's initial

18   copying of the web pages for purposes of creating

19   the Google index is not infringing?

20   A.    Google receives its copy as distributed

21   from me, so Google is not in fact copying, it is

22   requesting a copy from me.

23   Q.    So when Google requests a copy from you and

24   you provide the copy to Google, that's not

25   infringing; is that correct?

1      A.   That's my understanding, that's correct.

2      Q.   So the only copy that you object to is a

3    copy made when a user requests a copy of the cache

4    version of a web site and downloads it from the

5    Google server?

6      A.   I want to I guess be very clear here.  A

7    lot of times copy is used as -- to encompass all of

8    the rights of an author when one talks about a

9    copyright law, and so I apologize for kind of

10   getting off the subject of your question, but it is

11   a reproduction and distribution and not merely

12   making a copy.

13         But to answer your question, the

14   objectionable act which encompasses the reproduction

15   and distribution is when Google makes a copy and

16   distributes that copy of the cache copy that it

17   holds.

18     Q.   So if a user never requested a copy of a

19   web site, then there would be no infringement under

20   your analysis; is that correct?

21     A.   I don't believe that's -- that's fully

22   correct because I believe merely offering those

23   copies to the users is also likely an infringing

24   activity as well.

25     Q.   So it is your belief that there is

BLAKE A. FIELD - 06/09/05

1    registered your works?

2        A.   I intended to be prepared for the

3    possibility, yes.

4        Q.   Did you anticipate that you might sue

5    Google when you created your works?

6        A.   Again, I was prepared for the possibility

7    of that.

8            MR. O'CALLAGHAN:  Mark this as the next

9    exhibit.

10           (Exhibit 18 marked.)

11   BY MR. O'CALLAGHAN:

12       Q.   Handing you a document that was been marked

13   Defendants Exhibit 18, it is Bates labeled G-000389.

14   This is a letter from Michael Kwun of Google to you

15   dated April 16th, 2004.  Please take a moment to

16   review it and let me know when you are ready.

17       A.   I have reviewed it.

18       Q.   Did you receive a copy of this letter on or

19   about April 17th, 2004?

20       A.   I did.

21       Q.   In the first paragraph, Mr. Kwun indicates

22   that Google first learned that you did not wish to

23   have Google provide a cache copy of pages from your

24   web site when Google obtained a copy of your

25   Complaint.

1    think so.

2        Q.   Are you aware of any other search engines

3    that allow users to look at a cache copy of a web

4    page?

5        A.   I believe there are some others now that do

6    it.

7        Q.   Which ones?

8        A.   You know, I'm not -- I'm not for certain.

9    I think maybe Yahoo does it, maybe MSN, but I don't

10   recall specifically whether that's the case.  I

11   think so.

12       Q.   Have you checked to see if they cache

13   blakeswritings.com?

14       A.   I'm not for sure if I have.  It seems like

15   I had.

16       Q.   Do you recall if they did?

17       A.   Seems to be my recollection that they

18   didn't, when I checked.

19       Q.   So do you know when you checked Yahoo to

20   see if it cached blakeswritings.com?

21       A.   I don't recall last time I looked.

22       Q.   Do you know when you checked MSN to see if

23   it cached blakeswritings.com?

24       A.   Likewise, I can't recall when I looked.

25       Q.   But it is your recollection that Yahoo and

BLAKE A. FIELD - 06/09/05

CERTIFICATE OF REPORTER

1

2  STATE OF NEVADA    )
                      )SS:   HENDERSON
3  COUNTY OF CLARK    )

4      I, Carre Lewis, a duly commissioned and licensed

5  Court Reporter, Clark County, State of Nevada, do

6  hereby certify:  That I reported the taking of the

7  deposition of the witness, BLAKE A. FIELD,

8  commencing on Thursday, June 9, 2005, at 9:33 a.m.

9      That prior to being examined, the witness was,

10  by me, duly sworn to testify to the truth.  That I

11  thereafter transcribed my said shorthand notes into

12  typewriting and that the typewritten transcript of

13  said deposition is a complete, true and accurate

14  transcription of said shorthand notes.

15      I further certify that I am not a relative or

16  employee of an attorney or counsel of any of the

17  parties, nor a relative or employee of an attorney

18  or counsel involved in said action, nor a person

19  financially interested in the action.

20      IN WITNESS HEREOF, I have hereunto set my hand,

21  in my office, in the County of Clark, State of

22  Nevada, this 28th day of June, 2005.

23

24

25

_____
CARRE LEWIS, CCR NO. 497

1    Blake A. Field
     3750 Doris Place
2    Las Vegas, NV 89120
     (702) 373-1022
3

4    Plaintiff Pro Se

5

6                UNITED STATES DISTRICT COURT
                    DISTRICT OF NEVADA
7

8    BLAKE A. FIELD,                 )     No. CV-S-04-0413-RCJ-LRL
                         )

9        Plaintiff,          )    **PLAINTIFF'S ANSWERS TO**
                         )    **INTERROGATORIES OF DEFENDANT**

10   v.                         )    **GOOGLE, INC.**
                         )

11   GOOGLE, INC.,              )
                         )

12                          )
       Defendant.          )

13    _____ )
   AND RELATED COUNTERCLAIMS      )

14    _____ )

15

16   **INTERROGATORY NO. 1**

17   IDENTIFY all PERSONS who were involved in the creation of the website at

18   http:www.blakeswritings.com

19   **ANSWER TO INTERROGATORY NO. 1**

20   Blake A. Field.

21   **INTERROGATORY NO. 2**

22   DESCRIBE the specific contributions of each PERSON listed in the response to Interrogatory

23   No. 1.

24   **ANSWER TO INTERROGATORY NO. 2**

25   Blake A. Field created the webpages and uploaded them onto the server.

26   **INTERROGATORY NO. 3**

27   IDENTIFY all PERSONS who were involved in the creation of the WORKS.

28

1  **ANSWER TO INTERROGATORY NO. 3**

2  Blake A. Field.

3  **INTERROGATORY NO. 4**

4  DESCRIBE the specific contributions of each PERSON listed in the response to Interrogatory

5  No. 3.

6  **ANSWER TO INTERROGATORY NO. 4**

7  Blake A. Field authored the works.

8  **INTERROGATORY NO. 5**

9  IDENTIFY the date on which each of the WORKS was created

10  **ANSWER TO INTERROGATORY NO. 5**

11  The works were created over a three day period, January 4, 5, and 6, 2004. Plaintiff cannot recall

12  the specific day of creation of each of the individual works within that period.

13  **INTERROGATORY NO. 6**

14  For each of the WORKS, state the total amount of time spent creating the work.

15  **ANSWER TO INTERROGATORY NO. 6**

16  The works were created over a three day period, January 4, 5, and 6, 2004. The exact amount of

17  time spent authoring each work is unknown, however, it is estimated that on average each work

18  took between 25 and 30 minutes to author.

19  **INTERROGATORY NO. 7**

20  State whether YOU contend that YOU lost any revenue due to any web caching of the WORKS

21  by GOOGLE

22  **ANSWER TO INTERROGATORY NO. 7**

23  Plaintiff contends that Plaintiff lost revenue due to any web caching of the works by Google.

24  **INTERROGATORY NO. 8**

25  If the answer to Interrogatory No. 7 is affirmative, DESCRIBE the loss of revenue due to any

26  web caching of the WORKS by GOOGLE, including the amount lost, the time period for the

27  loss, and the URL of each of the cached page that you allege caused the loss.

28

**ANSWER TO INTERROGATORY NO. 8**

Plaintiff lost licensing revenue, as Google reproduced and distributed Plaintiff's works without paying a licensing fee to do so. The exact licensing arrangement and remuneration therefor that the parties may have entered into had Google properly licensed Plaintiff's works is unknown, therefore, the exact amount lost is unknown. The time period for the loss would be from the date Google without permission reproduced and distributed any of Plaintiff's works to internet users, through the date which Google removed Plaintiff's works from its cache.

The Urls of the cached pages which caused loss are as follows:

1.  http://216.239.53.104/search?=cache:YDM5G3B9oMwJ:www.blakeswritings.com/TheCeilingFan.html+&hl=en&ie=UTF-8

2.  http://216.239.53.104/search?=cache:ewYaOiZL99EJ:www.blakeswritings.com/TheDishwasher.html+&hl=en&ie=UTF-8

3.  http://216.239.53.104/search?=cache:XunbLE7_BtUJ:www.blakeswritings.com/TheDoorPatch.html+&hl=en&ie=UTF-8

4.  http://216.239.53.104/search?=cache:eCLsZEnSMuAJ:www.blakeswritings.com/TheDoorknob.html+&hl=en&ie=UTF-8

5.  http://216.239.53.104/search?=cache:TLduRzwsGY4J:www.blakeswritings.com/TheHumidifier.html+&hl=en&ie=UTF-8

6.  http://216.239.53.104/search?=cache:uewVuAcC2n8J:www.blakeswritings.com/TheMotorcycle.html+&hl=en&ie=UTF-8

1  7.  http://216.239.53.104/search?=cache:egjFs8wf7tQJ:www.blakeswritings.com/ThePick.ht
2      ml+&hl=en&ie=UTF-8
3
4  8.  http://216.239.53.104/search?=cache:Y2aSIiyEq-
5      gJ:www.blakeswritings.com/TheScooter.html+&hl=en&ie=UTF-8
6
7  9.  http://216.239.53.104/search?=cache:neilWOjU_7UJ:www.blakeswritings.com/TheSmok
8      eDetector.html+&hl=en&ie=UTF-8
9
10 10. http://216.239.53.104/search?=cache:rXiv0zVURfIJ:www.blakeswritings.com/TheVan.ht
11     ml+&hl=en&ie=UTF-8
12
13 11. http://216.239.53.104/search?=cache:B-
14     MCrKO58acJ:www.blakeswritings.com/ToDoWithoutYou.html+&hl=en&ie=UTF-8
15
16 12. http://216.239.53.104/search?=cache:fZUWVbrdtO8J:www.blakeswritings.com/TwoFlas
17     hlights.html+&hl=en&ie=UTF-8
18
19 13. http://216.239.53.104/search?=cache:nT_n8HG3qccJ:www.blakeswritings.com/UsedBed
20     .html+&hl=en&ie=UTF-8
21
22 14. http://216.239.53.104/search?=cache:249jIjE2720J:www.blakeswritings.com/WhichCola
23     DoYouLike.html+&hl=en&ie=UTF-8
24
25 15. http://216.239.53.104/search?=cache:UdMmi4_nE6KJ:www.blakeswritings.com/Antiper
26     spirant.html+&hl=en&ie=UTF-8
27
28

16. http://216.239.53.104/search?=cache:z1NUQj-

h1BAJ:www.blakeswritings.com/WinterDied.html+&hl=en&ie=UTF-8

17. http://216.239.53.104/search?=cache:xAmvcyy_MNIJ:www.blakeswritings.com/WriteSo

methingNice.html+&hl=en&ie=UTF-8

18. http://216.239.53.104/search?=cache:rtPNprYagfEJ:www.blakeswritings.com/BandT-

Shirt.html+&hl=en&ie=UTF-8

19. http://216.239.53.104/search?=cache:vPdCKqXB4CoJ:www.blakeswritings.com/BassSli

de.html+&hl=en&ie=UTF-8

20. http://216.239.53.104/search?=cache:X4EfpgX_tpsJ:www.blakeswritings.com/BoxOfMa

caroni.html+&hl=en&ie=UTF-8

21. http://216.239.53.104/search?=cache:j235t8P6RSoJ:www.blakeswritings.com/BrokenHe

adphones.html+&hl=en&ie=UTF-8

22. http://216.239.53.104/search?=cache:wHRDdniw71AJ:www.blakeswritings.com/Chewin

gGum.html+&hl=en&ie=UTF-8

23. http://216.239.53.104/search?=cache:eV3A0dUVkp8J:www.blakeswritings.com/Cribbag

e.htm+&hl=en&ie=UTF-8

24. http://216.239.53.104/search?=cache:rhk6sBUhLIUJ:www.blakeswritings.com/Crossing

Guard.html+&hl=en&ie=UTF-8

25. http://216.239.53.104/search?=cache:IPOhvuvwMREJ:www.blakeswritings.com/Dented
Mercedes.html+&hl=en&ie=UTF-8

26. http://216.239.53.104/search?=cache:i36cd3wGdnUJ:www.blakeswritings.com/TheAlar
mNextDoor.html+&hl=en&ie=UTF-8

27. http://216.239.53.104/search?=cache:YqcJehXxf9YJ:www.blakeswritings.com/TheAlar
mClock.html+&hl=en&ie=UTF-8

28. http://216.239.53.104/search?=cache:9-
Jh2vTpafuJ:www.blakeswritings.com/Sunglasses.html+&hl=en&ie=UTF-8

29. http://216.239.53.104/search?=cache:oG_p0-
M9NX4J:www.blakeswritings.com/StyxDancing.html+&hl=en&ie=UTF-8

30. http://216.239.53.104/search?=cache:aJK-
SjNVEBoJ:www.blakeswritings.com/StrawberryShampoo.html+&hl=en&ie=UTF-8

31. http://216.239.53.104/search?=cache:IFki_e9Op7YJ:www.blakeswritings.com/StopWhist
ling.html+&hl=en&ie=UTF-8

32. http://216.239.53.104/search?=cache:YoBl-
AkwG5YJ:www.blakeswritings.com/SportsCommentators.html+&hl=en&ie=UTF-8

33. http://216.239.53.104/search?=cache:v8Y9GqTeDxwJ:www.blakeswritings.com/RustyK
nives.html+&hl=en&ie=UTF-8

34. http://216.239.53.104/search?=cache:XrT5D6lmZFYJ:www.blakeswritings.com/RoomCl
eaning.html+&hl=en&ie=UTF-8

35. http://216.239.53.104/search?=cache:j1AG8dKAEPcJ:www.blakeswritings.com/OnlineD
rips.html+&hl=en&ie=UTF-8

36. http://216.239.53.104/search?=cache:Wja756Lkc1EJ:www.blakeswritings.com/OilChang
e.html+&hl=en&ie=UTF-8

37. http://216.239.53.104/search?=cache:7nqp!pksOEIJ:www.blakeswritings.com/Lotions.ht
ml+&hl=en&ie=UTF-8

38. http://216.239.53.104/search?=cache:2Qoact2gazkJ:www.blakeswritings.com/LeftFoot.ht
ml+&hl=en&ie=UTF-8

39. http://216.239.53.104/search?=cache:G-
QCkRAmobUJ:www.blakeswritings.com/lnkCartridge.html+&hl=en&ie=UTF-8

40. http://216.239.53.104/search?=cache:OesOhkWMnfgJ:www.blakeswritings.com/IBlame
AnneMurray.html+&hl=en&ie=UTF-8

41. http://216.239.53.104/search?=cache:w9qeJ1-
_VaAJ:www.blakeswritings.com/HikingToday.html+&hl=en&ie=UTF-8

42. http://216.239.53.104/search?=cache:mT1rSbpixOcJ:www.blakeswritings.com/HeaterHo
se.html+&hl=en&ie=UTF-8

43. http://216.239.53.104/search?=cache:5OPIRwcGcCEJ:www.blakeswritings.com/GoodTe a.html+&hl=en&ie=UTF-8

44. http://216.239.53.104/search?=cache:X98VHBFJyx8J:www.blakeswritings.com/GoodBu rritos.html+&hl=en&ie=UTF-8

45. http://216.239.53.104/search?=cache:RpjU86tVoIoJ:www.blakeswritings.com/FiresDoug hnuts.html+&hl=en&ie=UTF-8

46. http://216.239.53.104/search?=cache:kxcBnzNZvkoJ:www.blakeswritings.com/FilthyCo mforter.html+&hl=en&ie=UTF-8

47. http://216.239.53.104/search?=cache:ftPu- maX4sEJ:www.blakeswritings.com/Eyedrops.html+&hl=en&ie=UTF-8

48. http://216.239.53.104/search?=cache:SJJbRvrfCSAJ:www.blakeswritings.com/EveryChri stmas.html+&hl=en&ie=UTF-8

49. http://216.239.53.104/search?=cache:Taozmz0cGwEJ:www.blakeswritings.com/DriveDri veDrive.html+&hl=en&ie=UTF-8

50. http://216.239.53.104/search?=cache:dHzxmfcycXUJ:www.blakeswritings.com/Dogbait. html.+&hl=en&ie=UTF-8

**INTERROGATORY NO. 9**

State whether YOU contend that YOU suffered any loss of any rights in the WORKS

1    **ANSWER TO INTERROGATORY NO. 9**

2    Plaintiff contends that Plaintiff suffered loss of rights in the WORKS.

3    **INTERROGATORY NO. 10**

4    If the answer to Interrogatory No. 9 is affirmative, DESCRIBE each loss of any rights in the

5    WORKS, including the amount lost, the time period of each loss, and specific rights in the

6    WORKS you allege were harmed.

7    **ANSWER TO INTERROGATORY NO. 10**

8    With respect to all works, Plaintiff's exclusive right to reproduce and exclusive right to distribute

9    the works were both infringed by Defendant during the time the works were present in the

10    Google cache.

11    **INTERROGATORY NO. 11**

12    DESCRIBE all harm YOU allege to have suffered from any web caching of the WORKS by

13    GOOGLE

14    **ANSWER TO INTERROGATORY NO. 11**

15    Google infringed upon Plaintiff's exclusive right to reproduce and distribute the works due to

16    Google's web caching of Plaintiff's works.

17    **INTERROGATORY NO. 12**

18    IDENTIFY all PERSONS that YOU are aware of who have accessed one or more of the

19    WORKS through the Google system cache.

20    **ANSWER TO INTERROGATORY NO. 12**

21    Plaintiff is aware of only Plaintiff accessing one or more of the works through the Google cache.

22    **INTERROGATORY NO. 13**

23    DESCRIBE the access restrictions, if any, on the website at http://www.blakeswritings.com

24    **ANSWER TO INTERROGATORY NO. 13**

25    None.

26

27

28

1 **INTERROGATORY NO. 14**

2 DESCRIBE the attempts made, if any, to increase the number of visits by Internet users to the

3 website at http://www.blakeswritings.com

4 **ANSWER TO INTERROGATORY NO. 14**

5 After its creation, the website was submitted to a plethora of internet search engines, including

6 Yahoo, Lycos, Google, Webcrawler, and Ask.com. The services of Positiontech were utilized to

7 ensure inclusion in inktomi and its partners' search engines.

8 **INTERROGATORY NO. 15**

9 DESCRIBE all attempts made, if any, to have the WORKS included in the Google system cache

10 **ANSWER TO INTERROGATORY NO. 15**

11 None.

12 **INTERROGATORY NO. 16**

13 DESCRIBE all attempts to host online advertisements on the website at

14 http://www.blakeswritings.com

15 **ANSWER TO INTERROGATORY NO. 16**

16 None.

17 **INTERROGATORY NO. 17**

18 DESCRIBE all COMMUNICATIONS with any third party that RELATE TO web caching of the

19 WORKS

20 **ANSWER TO INTERROGATORY NO. 17**

21 Objection. This interrogatory is overbroad, as it seeks for Plaintiff to detail any communication,

22 written or oral, in any way relating to any web cache of any of Plaintiff's works.

23 **INTERROGATORY NO. 18**

24 DESCRIBE all COMMUNICATIONS with any third party that RELATE TO web caches

25 **ANSWER TO INTERROGATORY NO. 18**

26 Objection. This interrogatory is overbroad, as it seeks for Plaintiff to detail any communication,

27 written or oral, in any way relating to any web cache, at any time during Plaintiff's life.

28

**INTERROGATORY NO. 19**

DESCRIBE all COMMUNICATIONS with any third party that RELATE TO the operation of internet search engines.

**ANSWER TO INTERROGATORY NO. 19**

Objection. This interrogatory is overbroad, as it would require Plaintiff to detail any communication with any other person regarding any internet search engine at any and all points in Plaintiff's life. Further, this interrogatory calls for information which in no way is relevant to any claims of Plaintiff nor defenses of Defendant – particularly, Defendant's implied license and estoppel defenses focus solely on representations between the parties.

**INTERROGATORY NO. 20**

DESCRIBE all COMMUNICATIONS with any third party that RELATE TO the legal propriety of the Google system cache.

**ANSWER TO INTERROGATORY NO. 20**

Objection. This interrogatory is overbroad and over-burdensome as it would require Plaintiff to detail any and all communications with anyone at any time regarding the legal implications of the Google cache. Further, this interrogatory calls for information which in no way is relevant to any claims of Plaintiff nor defenses of Defendant – particularly, Defendant's implied license and estoppel defenses focus solely on representations between the parties.

**INTERROGATORY NO. 21**

If YOU contend that the Google system cache does not qualify for the safe harbor for service providers provided by 17 U.S.C. § 512(a), DESCRIBE all bases for that contention.

**ANSWER TO INTERROGATORY NO. 21**

Google does not meet the definition of service provider. Google does not operate a system through which transmissions occur.  Even if it did meet the definition of service provider: (1) transmissions from the Google cache are not through any system or network operated by Google, rather, they originate with Google.(2) Google selects what material is in its cache, (3) Google selects the recipient of the cache material (4) storage in the cache is not intermediate or transient